[No. B088343. Second Dist., Div. Two. Aug. 23, 1995.]

AMERICAN SUZUKI MOTOR CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
DIERDRE CARNEY et al., Real Parties in Interest.

## COUNSEL

Sidley & Austin, Theodore N. Miller, James M. Harris, Gene C. Schaerr, Catherine M. Valerio Barrad, Crosby, Heafey, Roach & May, Ned N. Isokawa, Mary C. Oppedahl, McCutchen, Doyle, Brown & Enersen, David M. Heilbron, Kirkland & Ellis and James H. Schink for Petitioner.

Fred L. Main, William Campbell, Charles H. Lockwood II, O'Melveny & Myers, Carl R. Schenker, Jr., and John H. Beisner as Amici Curiae on behalf of Petitioner.

No appearance for Respondent.

King & Williams, Terrence P. Keelan, David E. Stanley, Ralph O. Williams III and Larry D. Schwartz for Real Parties in Interest.

Robert A. Graham as Amicus Curiae on behalf of Real Parties in Interest.

## OPINION

NOTT, J.—Where class-action plaintiffs allege they have suffered no personal injury or property damage from a vehicle they claim is defectively designed, and it is impliedly conceded that their vehicles have—since the date of purchase—remained fit for their ordinary purpose, can plaintiffs state a cause of action in breach of implied warranty? We conclude they cannot, and that the superior court erred in certifying for class treatment plaintiffs' implied warranty claims, and in thereafter refusing to decertify the class.

Petitioner, American Suzuki Motor Corporation (Suzuki) seeks a writ of mandate directing the superior court to vacate its order denying Suzuki's motion to decertify a class.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

Real parties, Deirdre Carney and John Robinson, filed a class action lawsuit on behalf of themselves and others similarly situated, i.e., "all persons who purchased a [1986-1994 model year] Suzuki Samurai motor vehicle in California on or after September 5, 1985."

In their complaint, real parties attempted, inter alia, to plead causes of action against Suzuki for breach of the implied warranty of merchantability set forth in California Uniform Commercial Code section 2314[1], the implied warranty of fitness for a particular purpose set forth in section 2315, and the implied warranty provisions of the Song-Beverly Consumer Warranty Act (Song-Beverly Act) set forth in Civil Code section 1790 et seq. Real parties alleged as to these causes of action that they and 45,000 other consumers had purchased during the class period a sport utility vehicle called the Samurai, manufactured by Suzuki; that the vehicle "brings together a high center of gravity, a narrow tread width, and light weight which combine to create an unacceptable risk of a deadly roll-over accident when driven under reasonably anticipated and foreseeable driving conditions"; and that because of this

---

[1]All further statutory references are to the California Uniform Commercial Code unless otherwise indicated.

design flaw the Samurai is unfit for its "ordinary purpose" which is to "transport people and cargo on the highways and byways of this [s]tate."

Real parties did not allege they had been injured personally or had incurred any consequential property damage as a result of the design defect. They sought damages "measured by the cost of repairing the inherent safety defect in the Samurai."

Shortly after filing their complaint, real parties moved to certify the class, submitting in support of the motion the declaration of an expert who opined that the Samurai did, indeed, have a rollover design defect which rendered it unsafe.

In opposition, Suzuki presented evidence indicating that the vast majority of the vehicles sold during the class period have, since the date of purchase, provided basic transportation without manifesting the alleged rollover defect.

The superior court found that real parties had presented sufficient evidence tending to show that the Samurai has an "inherent defect" consisting of "a roll-over propensity by reason of a high center of gravity and a narrow [track width]," and certified for class treatment real parties' two Commercial Code-based implied warranty counts and their Song-Beverly Act claim. Thereafter, the court denied Suzuki's motion to decertify the class. This writ petition followed.

## II. Discussion

Suzuki contends "the superior court committed clear error of law in holding that class action plaintiffs may maintain claims for breach of the implied warranty of merchantability when the vast majority of the products at issue have concededly remained fit for their ordinary purpose."

### A. *Standard of Review*

Code of Civil Procedure section 382 provides that a class action may be brought "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court[.]"

A prerequisite to the maintenance of a class action is the existence of an ascertainable class. (*Occidental Land, Inc.* v. *Superior Court* (1976) 18 Cal.3d 355, 360-361 [134 Cal.Rptr. 388, 556 P.2d 750].) For a class to be

considered ascertainable, its members must have a plausible cause of action against the defendant. (See *Collins* v. *Safeway Stores, Inc.* (1986) 187 Cal.App.3d 62, 72 [231 Cal.Rptr. 638].) If multiple plaintiffs fail to meet this elementary standard, no ascertainable class exists, and a class action may not be maintained. (*Ibid.*) In order to determine whether multiple members of the proposed class have a viable cause of action, the trial court is required to examine the issues framed by the pleadings, the law applicable to the cause of action alleged, and "the actual performance of [the product], as revealed by the record developed between filing the complaint and moving for certification." (*Feinstein* v. *Firestone Tire and Rubber Co.* (S.D.N.Y. 1982) 535 F.Supp. 595, 603.)

### B. *Implied Warranty Claims*

This case principally implicates the implied warranty of merchantability set forth in section 2314[2] which provides as follows:

"(1) Unless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. . . .

"(2) Goods to be merchantable must be at least such as

". . . . . . . . . . . . . . . . . . . . . . .

"(c) Are fit for the ordinary purposes for which such goods are used[.]"

Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law. (*Hauter*

---

[2]The complaint here also alleged a breach of the implied warranty of fitness for a particular purpose under section 2315, and a Song-Beverly Act claim.

Under section 2315, an implied warranty of fitness for a particular purpose exists where the seller at the time of contracting has reason to know (a) any particular purpose for which goods are required, and (b) that the buyer is relying on the seller's skill or judgment to select or to furnish suitable goods for such purpose. "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." (See code com., 23A West's Ann. Cal. U. Com. Code (1964 ed.) p. 289.) Because real parties have failed to identify any legally cognizable "particular purpose" for which they supposedly obtained their vehicles (other than the general purpose of providing transportation), no implied warranty of fitness claim against Suzuki has been stated.

The Song-Beverly Act incorporates the provisions of sections 2314 and 2315. It "supplements, rather than supersedes, the provisions of the California Uniform Commercial Code" by broadening a consumer's remedies to include costs, attorney's fees, and civil penalties. (*Krieger* v. *Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205, 213 [285 Cal.Rptr. 717].)

v. *Zogarts* (1975) 14 Cal. 3d 104, 117 [120 Cal.Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1283] (*Hauter*).) It does not "impose a general requirement that goods precisely fulfill the expectation of the buyer. Instead, it provides for a minimum level of quality." (*Skelton* v. *General Motors Corp.* (N.D.Ill. 1980) 500 F.Supp. 1181, 1191, revd. on other grounds, 660 F.2d 311 (7th Cir. 1981), cert. den., 456 U.S. 974 [72 L.Ed.2d 848, 102 S.Ct. 2238] (1982); see also *Burr* v. *Sherwin Williams Co.* (1954) 42 Cal.2d 682, 694 [268 P.2d 1041]; *Moore* v. *Hubbard & Johnson Lumber Co.* (1957) 149 Cal.App.2d 236, 240-241 [308 P.2d 794]; *Steen* v. *Southern California Supply Co.* (1925) 74 Cal.App. 265, 268 [239 P. 1098]; *Remsberg* v. *Hackney Manufacturing Co.* (1917) 174 Cal. 799, 806 [164 P. 792].)

Courts in other jurisdictions have held that in the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation. (See *Feinstein* v. *Firestone Tire & Rubber Co.*, *supra*, 535 F.Supp. 595; *Carlson* v. *General Motors Corp.* (4th Cir. 1989) 883 F.2d 287, 297-298, cert. den.; *Taterka* v. *Ford Motor Co.* (1978) 86 Wis.2d 140 [271 N.W.2d 653]; *Skelton* v. *General Motors Corp.*, *supra*, 500 F.Supp. 1181, 1191.)

In *Feinstein* v. *Firestone Tire and Rubber Co.*, *supra*, 535 F.Supp. 595, for example, the plaintiffs sought damages arising from an alleged breach of the implied warranty of merchantability as to those putative class members whose Firestone tires remained failure free throughout the time they were used. (*Id.* at p. 601.) After noting that the vast majority of the tires had not malfunctioned, the court disposed of plaintiffs' claims as follows: "That raises the question of whether the owners of such tires [which have not failed] have suffered any damages. Plaintiffs say they have. They claim that all Firestone tires contained common defects; and their damage theory is '. . . that the purchase of a defective tire, *ipso facto*, caused economic loss.' " (*Id.* at p. 602.) "No persuasive authority is cited for that proposition, and I reject it. Tires which lived full, productive lives were, by demonstration and definition, 'fit for the ordinary purposes' for which they were used; hence they were 'merchantable' under [Uniform Commercial Code] § 2-314[3], and no cause of action for breach of an implied warranty can arise. This is quite basic[.]" (*Ibid.*)

In *Carlson* v. *General Motors Corp.*, *supra*, 883 F.2d 287, plaintiffs who had experienced no malfunction sought certification of an implied warranty

---

[3]The Uniform Commercial Code section at issue in *Feinstein* is identical to section 2314 of the California Uniform Commercial Code.

class alleging that a latent defect caused their vehicles to experience "diminished resale value." (*Id.* at pp. 297-298.) In dismissing these claims the court held that Uniform Commercial Code section 2-314 did not encompass plaintiffs' "loss of resale value claims." The difficulty according to the court was that the vehicles at issue "have served the traditionally recognized 'purpose' for which automobiles are used. Since cars are designed to provide transportation, the implied warranty of merchantability is simply a guarantee that they will operate in a 'safe condition' and 'substantially free of defects.' [Citation.] Thus, 'where a car can provide safe, reliable transportation[,] it is generally considered merchantable.' [Citation.]" (883 F.2d at pp. 297-298.)

In *Yost* v. *General Motors Corp.* (D.N.J. 1986) 651 F.Supp. 656, plaintiff brought a putative class action on behalf of all owners of certain model Cadillacs, alleging that the existence of an unmanifested engine defect constituted a breach of warranty. The court dismissed the claim because the plaintiff had not alleged any actual mechanical difficulties in his vehicle. (*Id.* at pp. 657-658.)

Real parties do not attempt to distinguish these automotive cases. They claim, in effect, that in California the test of merchantability is not whether the product in question is capable of performing as warranted, but whether it is free of all speculative risks, safety-related or otherwise. The handful of cases cited by real parties in support of this proposition are distinguishable. Five involve a product that actually failed. (See *Greenman* v. *Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 59 [27 Cal.Rptr. 697, 377 P.2d 897, 13 A.L.R.3d 1049] [failed power tool]; *Escola* v. *Coca Cola Bottling Co.* (1944) 24 Cal.2d 453, 456 [150 P.2d 436] [broken soft drink bottle]; *Sacramento Regional Transit Dist.* v. *Grumman Flxible* (1984) 158 Cal.App.3d 289, 292 [204 Cal.Rptr. 736] [broken fuel tank support and cracked component parts]; *Hauter, supra,* 14 Cal.3d at p. 109 [golf practice device that failed, causing injury]; *Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 557 [34 Cal.Rptr.2d 607, 882 P.2d 298] [detached wheel assembly bracket].) Moreover, four of these five decisions dealt with the elements of negligence or strict liability in tort, not the implied warranty of merchantability. (See *Greenman* v. *Yuba Power Products, Inc., supra,* 59 Cal.2d at p. 59; *Escola* v. *Coca Cola Bottling Co., supra,* 24 Cal.2d at p. 453; *Sacramento Regional Transit Dist.* v. *Grumman Flxible, supra,* 158 Cal.App.3d at p. 292; *Soule* v. *General Motors Corp., supra,* 8 Cal.4th at p. 557.)

The only decision cited by real parties that deals with an implied warranty claim is *Hauter, supra,* 14 Cal.3d at page 109. But the finding of nonmerchantability in that case rested upon the fact that the device was not fit for

the ordinary purposes for which such goods are used because it had failed when used as a training device by a beginner golfer—the precise use contemplated for the product. (*Id.* at pp. 117-118.) *Hauter* thus provides no support for the proposition that a remote fear or expectation of failure is sufficient to establish nonmerchantability.

Real parties place greatest reliance on the case of *Anthony* v. *General Motors Corp.* (1973) 33 Cal.App.3d 699 [109 Cal.Rptr. 254] (*Anthony*). In that case, the plaintiffs alleged, and General Motors (GM) did not deny, that GM had made specific written representations amounting to an express warranty that ". . . the wheels [on the trucks], if loaded within [specified weight limits], were safe and adequate for such loads." (*Id.* at p. 707.) The owners of these trucks brought claims for breach of express warranty, arguing that the wheels on their trucks could not safely carry the amount of weight that GM had promised they could carry. The court concluded that all truck owners, whether or not they had experienced a wheel failure, were entitled to pursue an express warranty claim, because the above described "representation was part of the original sale transaction and . . . constituted a warranty upon which plaintiffs and the fellow members of their class were entitled to rely." (*Ibid.*)

In allowing the breach of warranty to be maintained as a class action the court opined: "We think it clear that the gravamen of plaintiffs' case is the contention that *all* wheels of the type involved contain an inherent defect which may cause them to fail at some time, even if loaded within the limits of the representations discussed below and even if maintained and driven with due care. It is patent from the record before us that that issue is one which will require an elaborate and probably a protracted trial. It is exactly the sort of common issue for which class actions are designed." (*Anthony*, *supra*, 33 Cal.App.3d at pp. 704-705, italics in original.)

*Anthony* is distinguishable since in that case each member of the putative class had a viable cause of action against GM for breach of express warranty. This being so, an ascertainable class existed, and plaintiffs' claim was properly certified for class treatment. Here, the evidence presented demonstrated that only a small percentage of the Samurais sold during the class period have been involved in rollover accidents, and real parties have impliedly conceded that nearly all of them have not.[4] Because the vast majority of the Samurais sold to the putative class "did what they were supposed to do for as long as they were supposed to do it" (*Feinstein* v. *Firestone Tire and Rubber Co.*, *supra*, 535 F.Supp. at p. 603), we conclude

---

[4] Real party Carney, for example, drove her Samurai 90,000 miles before she sold it.

that these vehicles remained fit for their ordinary purpose. This being so, their owners are not entitled to assert a breach of implied warranty action against Suzuki, and it was, therefore, error to conclude, as did the trial court, that an ascertainable class existed, and that plaintiffs' implied warranty claims should be certified for class treatment. To hold otherwise would, in effect, contemplate indemnity for a potential injury that never, in fact, materialized. And, compensation would have to be paid for a product "defect" that was never made manifest, in a product that for the life of any warranty actually performed as Suzuki guaranteed it would.

## C. *The NHSTA Remedy*

Real parties contend that unless consumers are allowed to pursue an implied warranty claim under the circumstances presented here, they will be denied "any remedy when they unknowingly buy [a defective vehicle] which pose[s] a danger to their lives and safety." According to real parties, Suzuki "would rather fight off strict liability claims one at a time than join the issue in a single action which will resolve the defect issue once and for all."

Implicit within this contention is the acknowledgment that consumers who have not suffered personal injury or incurred property damage as a result of an alleged safety-related design defect are barred from asserting a strict products liability action. (See *Greenman* v. *Yuba Power Products, Inc.*, *supra*, 59 Cal.2d 57; *Seely* v. *White Motor Co.* (1965) 63 Cal.2d 9, 15 [45 Cal.Rptr. 17, 403 P.2d 145].)

Of course, the fact that the vast majority of consumers who have purchased Samurais are precluded from bringing a strict liability claim does not mean their cry for consumer protection should go unheeded. We, too, believe an impartial determination as to whether the Samurai is defectively designed should be made, and, to the extent the flaw is found to exist, Suzuki should be required to make the necessary repairs. It is our opinion, however, that under the circumstances of this case it is a perversion of both the class action device and warranty law to allow a ruling on the "defect issue" to be secured in connection with an implied warranty action. The remedy which will best promote consumer safety, and which will address real parties' concern that "tragic consequences" will result if the defect is not

remedied, is to petition the National Highway Traffic Safety Administration (NHTSA)[5] for a defect investigation.

Any interested person may file a petition with the Secretary of Transportation requesting the commencement of a proceeding to determine whether to issue a recall order. (49 U.S.C. § 30162.) If it is determined that the vehicle contains a defect, an order may issue directing the manufacturer to remedy it. (See 49 U.S.C. §§ 30118, 30120.)

Contained within the instant record is documentation showing that in 1988 NHTSA denied petitions to open a defect investigation of the Samurai made by two interest groups, the Center for Auto Safety and the Safety First Club of Maryland.[6] Both groups based their petition on undue "rollover propensity," the same defect alleged by real parties in this case. Suzuki also claims, and real parties do not dispute, that in recent years NHSTA has considered five other such petitions with respect to other sport utility vehicles.

Real parties, of course, contend their expert has propounded a defect theory which differs from that considered in the 1988 investigation by NHSTA. We are unable to discern on the record before us the validity of this statement. What is apparent, however, is that NHTSA has accumulated a wealth of information concerning sport utility vehicles in general, and the Samurai in particular—information which will undoubtedly be helpful in reviewing any recall petitions which may be filed alleging a new theory concerning the Samurai's alleged propensity to roll over.

In certifying the class, the superior court designated two subclasses consisting of the original purchasers of Samurais who still own their vehicles,

---

[5]Suzuki contends the National Traffic and Motor Vehicle Safety Act of 1966 has preempted by implication real parties' state warranty claims because the state-law principle they seek to vindicate would conflict with federal law. "[A] federal statute implicitly overrides state law either when the scope of a statute indicates that Congress intended federal law to occupy a field exclusively, [citation], or when state law is in actual conflict with federal law." (*Freightliner Corp* v. *Myrick* (1995) ___ U.S. ___, ___ [131 L.Ed.2d 385, 392, 115 S.Ct. 1483, 1487].) Implied conflict preemption exists "where it is 'impossible for a private party to comply with both state and federal requirements,' [citation], or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' [Citation.]" (*Ibid.*) The record in this case is inadequate with respect to the issue of implied preemption, and, in any case, we have determined that real parties are not entitled to maintain the state law claims they allege.

[6]In a report dated September 8, 1988, NHSTA noted, "[t]he rollover crash involvement of the Samurai appears to be within the range of most other light utility vehicles. Rollovers where they have occurred often appear to have been influenced by adverse driver and environmental factors such as high risk driving, maneuvers, drinking, low ambient light, and lack of driver familiarity with either the vehicle or the road."

and the original purchasers who have sold their Samurais. Although a recall will not assist those plaintiffs who have sold their Samurais, it will further public safety by requiring Suzuki (should the defect be found to exist) to contact the *current* owners and make the necessary repairs.

Because the evidence here indicates that a cause of action for breach of the implied warranty of merchantability can be maintained by only a few members of the putative class, we conclude that the superior court erred in certifying the class, and in refusing, thereafter, to decertify it.

## III. DISPOSITION

Let a peremptory writ of mandate issue directing the superior court to vacate its order of November 2, 1994, denying petitioner's motion to decertify the class, and to enter a new order granting the motion. The temporary stay issued on November 22, 1994, is vacated.

Boren, P. J., and Fukuto, J., concurred.

A petition for a rehearing was denied September 7, 1995, and the opinion was modified to read as printed above. The petition of real parties in interest for review by the Supreme Court was denied November 22, 1995. Mosk, J., was of the opinion that the petition should be granted.