[No. G031180. Fourth Dist., Div. Three. Dec. 15, 2003.]

DARRYL JON MOCEK, as Administrator, etc., Plaintiff and Respondent, v. ALFA LEISURE, INC., Defendant and Appellant.

### Counsel

Turner, Reynolds, Greco & O'Hara, Frederick E. Turner and Glen R. Segal for Defendant and Appellant.

Anderson Law Firm, Martin W. Anderson and Ivy Tsai for Plaintiff and Respondent.

### Opinion

**RYLAARSDAM, Acting P. J.**—Defendant Alfa Leisure, Inc. appeals from a judgment following a bench trial. The action arose from the purchase of a travel trailer by plaintiff Frank Mocek, now deceased. (Although the administrator of Mr. Mocek's estate has substituted in as plaintiff, we refer to Mocek as "plaintiff.") The trial court found that defects in the trailer constituted a breach of the implied warranty of merchantability and rendered a judgment in the amount of the purchase price, plus interest, conditioned upon plaintiff returning the trailer to defendant.

The trial court concluded that, where the implied warranty of merchantability is breached, applicable statutes do not require a buyer to give the seller an opportunity to repair before rescinding the purchase. Defendant contends plaintiff could not rescind his purchase without first giving it an opportunity to repair the defects. We agree with the trial court and affirm the judgment because, although a different rule may apply where there is a breach of an express warranty, there is no requirement the seller be given an opportunity to repair when the implied warranty of merchantability is breached.

## FACTS

Plaintiff and his son each purchased the same model fifth-wheel travel trailer manufactured by defendant. The trailers were delivered to them at a recreational vehicle park. They were required to sign documents and pay for the trailers before being given an opportunity to inspect them. After delivery, plaintiff's son, who had over 25 years' experience with travel trailers and had hooked up hundreds of trailers to electrical power, connected the trailers to the park's electricity supply. He experienced no problem with his own trailer. But shortly after he connected plaintiff's trailer to the power source, the electrical outlets and appliances ceased operating. When they turned on the TV/VCR in the trailer the next day, it started to smoke. Plaintiff's son then tried resetting the circuit breakers but sparks and smoke came from the breaker panel. Defendant arranged to have one of its technicians examine the trailer. After this examination, the technician told plaintiff he could not fix the trailer's electrical system in place; it would have to be moved to defendant's plant for repairs. He told plaintiff defendant would have to replace all of the appliances and would separately test each wire, and would do so at no charge to plaintiff.

Plaintiff refused to let defendant take the trailer to be repaired. He advised defendant that he wanted a new trailer or a refund of the purchase price. He stated he would have no confidence in a repaired trailer; the damage was "too extensive." He also stated "there [was] no way that I would be comfortable that the thing was truly repaired as if it were a brand[]new trailer." Defendant did not replace the trailer nor refund the purchase price; plaintiff never used the trailer and sued.

Plaintiff's judgment was based on breach of the implied warranty of merchantability under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.) (the Act) and was in the amount of the purchase price, with interest, conditioned upon a return of the trailer. The court also held for plaintiff under his cause of action for unfair competition (Bus. & Prof. Code, § 17200), but no separate damages were awarded under this statute and the appeal asserts no separate issues with respect thereto.

## DISCUSSION

*Introduction*

Defendant claims that, where the implied warranty of merchantability is breached, consumers may not rescind the purchase contract without first affording the manufacturer an opportunity to repair. The Act does not contain language supporting this claim; neither do the provision of the California

Uniform Commercial Code (Commercial Code) incorporated in the Act to the extent they deal with the warranty of the merchantability. Defendant, recognizing this, wants us to look beyond the language of the Act and consider other parts of the Commercial Code, as well as the legislative intent, history, and commentary to both statutes. Defendant attempts to explain its contentions in a lengthy and complicated analysis. But, where the language of a statute is unambiguous, we may only look to its plain meaning unless this would frustrate its apparent purpose or lead to an absurd result. (*Williams v. Superior Court* (2001) 92 Cal.App.4th 612, 621 [111 Cal.Rptr.2d 918]; *Souza v. Lauppe* (1997) 59 Cal.App.4th 865, 874 [69 Cal.Rptr.2d 494].) Here the language of the statute is plain, a plain reading does not frustrate the apparent purpose of the statute, and no absurdity results. We therefore decline defendant's invitation that we engage in a hermeneutic exercise to demonstrate that the statute means something other than what it says.

### Overview of the Implied Warranty of Merchantability

■ As defined in the Act, an implied warranty of merchantability guarantees that "consumer goods meet each of the following: [¶] (1) Pass without objection in the trade under the contract description. [¶] (2) Are fit for the ordinary purposes for which such goods are used. [¶] (3) Are adequately contained, packaged, and labeled. [¶] (4) Conform to the promises or affirmations of fact made on the container or label." (Civ. Code, § 1791.1, subd. (a).) "Unlike express warranties, which are basically contractual in nature, the implied warranty of merchantability arises by operation of law. [Citation.] . . . '[I]t provides for a minimum level of quality.' [Citations.]" (*American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291, 1295–1296 [44 Cal.Rptr.2d 526].) Thus, a breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use. (Com. Code, § 2314, subd. (2).)

When there has been a breach of the implied warranty of merchantability, a buyer "may bring an action for the recovery of damages and other legal and equitable relief." (Civ. Code, § 1794, subd. (a).) "Where the buyer has rightfully rejected or justifiably revoked acceptance of the goods or has exercised any right to cancel the sale, Section[] 2711 . . . of the Commercial Code shall apply." (Civ. Code, § 1794, subd. (b)(1).) Commercial Code section 2711, subdivision (1) provides that "the buyer may cancel and . . . recover[] so much of the price as has been paid . . . ."

### Remedies for Breach of Express and Implied Warranties Are Not Identical

Defendant argues that, despite the plain language of the quoted statutes, plaintiff "was not justified in rejecting the trailer and demanding a refund

without first affording [defendant the right to] repair," and thus plaintiff "did not have the right to cancel the contract and recover the purchase price paid . . . ." Not so. True, where an express warranty is breached, the Act sets out an extensive scheme requiring manufacturers to repair (Civ. Code, § 1793.2), and the buyer has a concomitant duty to allow a reasonable number of opportunities for repair before it can demand a replacement of the goods or reimbursement (Civ. Code, § 1793.2, subd. (d); *Silvio v. Ford Motor Co.* (2003) 109 Cal.App.4th 1205, 1207 [135 Cal.Rptr.2d 846]; see also *Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 302–303 [45 Cal.Rptr.2d 10]). But this portion of the statute does not apply to the breach of an implied warranty of merchantability.

Defendant maintains that the Legislature could not have intended different procedures for breaches of express and implied warranties. A similar claim was considered and rejected in *Music Acceptance Corp. v. Lofing* (1995) 32 Cal.App.4th 610 [39 Cal.Rptr.2d 159]. In that case, the court affirmed a finding the seller had breached the implied warranty of merchantability. (*Id.* at p. 621.) In so doing, it specifically rejected the plaintiff's argument that the procedure under Civil Code section 1793.2, subdivision (d) concerning replacement or repair of defective goods should be applied; that section, the court held, applies only to express warranties and "has no relevance to the implied warranty of merchantability . . . ." (32 Cal.App.4th at p. 620.) It further explained that the remedies for breach of the implied warranty are set out in Civil Code sections 1791.1 and 1794 and in Commercial Code section 2711, which give a buyer the right "to cancel the contract and recover any amounts paid toward the purchase of the goods. [Citations.]" (32 Cal.App.4th at p. 621.)

Defendant urges us to disregard *Music Acceptance*, contending it does not control because the facts are distinguishable. There, the seller attempted and failed to repair a defective piano, and the issue was whether the buyer was required to accept a substitute instrument rather than a cancellation of the purchase contract. (*Music Acceptance Corp. v. Lofing, supra,* 32 Cal.App.4th at p. 620.) But the issue regarding replacement and repair is identical because only the portion of the Act dealing with breaches of express warranties requires the buyer to give the seller the opportunity either to repair or to replace the defective goods.

Citing *Krieger v. Nick Alexander Imports, Inc.* (1991) 234 Cal.App.3d 205 [285 Cal.Rptr. 717], defendant points out that the Act supplements and does not supersede the Commercial Code. But, contrary to defendant's contention, "[W]here the provisions of the Commercial Code conflict with the rights guaranteed to buyers of consumer goods under the provisions of [the Act], the provisions of [the Act] shall prevail." (Civ. Code, § 1790.3.) The Act was intended to broaden the remedies set out in the Commercial Code

(*American Suzuki Motor Corp. v. Superior Court, supra,* 37 Cal.App.4th at p. 1295, fn. 2); defendant's interpretation would abridge them.

Defendant also argues that Commercial Code sections 2508 (seller has right to cure and a proper re-tender may eliminate buyer's right to cancel) and 2607, subdivision (3)(A) (buyer must notify seller of breach within reasonable time or lose remedies), require a buyer to allow repairs to be made. It claims those sections are more specific than Civil Code sections 1791.1, subdivision (d) and 1794 and thus should control. But the latter sections directly address the implied warranty of merchantability whereas the first two do not. Nor do we agree with defendant's argument that the Commercial Code takes precedence based on Commercial Code section 1104, which provides that no part of that code "shall be deemed to be impliedly repealed by subsequent legislation if such construction can reasonably be avoided." Application of the Act based on its plain reading does not repeal the Commercial Code, either explicitly or impliedly; the cited portions of the two statutes simply deal with different subjects.

Defendant's interpretation of the Act cannot be reconciled with its express language. Defendant's construction would render superfluous the provisions of Civil Code section 1794, subdivision (b)(1) which give buyers the right to cancel the purchase contract. The referenced sections of the Commercial Code (§§ 2711, 2712, and 2713) merely deal with the buyer's rights upon such cancellation and do not grant any right to the seller to repair or replace the goods. " '[S]tatutes must be harmonized, both internally and with each other, to the extent possible.' [Citations.] [¶] . . . They will not be construed in such a way as to render related provisions nugatory. [Citation.]" (*Young v. Gannon* (2002) 97 Cal.App.4th 209, 223 [118 Cal.Rptr.2d 187].)

Defendant claims that, if the Legislature had intended to give a consumer a right to cancel without a prior right to repair, it would have said so. Rather we would expect the contrary; if the Legislature had intended that if the seller breaches the implied warranty of merchantability it obtains a right to repair, it would have so stated. This is particularly true because the Legislature expressly provided for repair where a seller breaches an express warranty. The Act's provisions requiring repairs after breach of an express warranty are lengthy and detailed. There is no reason to believe failure to set out the same process in case of a breach of the implied warranty of merchantability was an oversight. (See *Estate of Messner* (1987) 190 Cal.App.3d 818, 821 [235 Cal.Rptr. 495] [Legislature's silence on retroactivity of statute not expression of intent to apply it retroactively].) "The courts may not provide words or language which are not found in a statute in order to accommodate a litigant. [Citation.]" (*People v. Amerson* (1984) 151 Cal.App.3d 165, 169 [198 Cal.Rptr. 678].)

*Implied Warranty of Merchantability Controls*

█ Defendant also argues that the express warranty on plaintiff's trailer trumps the implied warranty of merchantability. It bases this argument on Commercial Code section 2317 which provides that express and implied warranties are to be "construed as consistent with each other and as cumulative, but if such construction is unreasonable the intention of the parties shall determine which warranty is dominant. . . . [¶] . . . [¶] (c) Express warranties displace inconsistent implied warranties other than an implied warranty of fitness for a particular purpose." But there is no displacement language under the Act, which, as we have demonstrated, controls. Also, the Act and the Commercial Code do not treat the implied warranty of merchantability identically. For example, Commercial Code section 2316 allows the parties to disclaim the implied warranty of merchantability. Therefore, an express warranty may be construed to supersede an implied warranty. But the Act extends greater protection to consumers by specifically prohibiting a waiver of the implied warranty of merchantability, except where the sale is "as is"; not the case here. (Civ. Code, §§ 1792, 1792.3; *Music Acceptance Corp. v. Lofing, supra,* 32 Cal.App.4th at p. 619.)

*Appeal of Award of Attorney Fees Moot*

Defendant challenges the postjudgment award of attorney fees solely on the ground that, if we reversed the judgment, plaintiff would no longer be the prevailing party. Since we are affirming the judgment, the challenge to attorney fees is moot.

*Plaintiff's Motions to Strike and Request for Judicial Notice*

Plaintiff filed a lengthy motion to strike the face page of defendant's request for a statement of decision in its appendix and also moved to strike portions of the reply brief where defendant argues we may not rely on the statement of decision. We did not consider defendant's argument first raised in the reply brief; it was waived by a failure to argue it in the opening brief. (*Katelaris v. County of Orange* (2001) 92 Cal.App.4th 1211, 1216, fn. 4 [112 Cal.Rptr.2d 556].) Moreover, we did not rely on the page from the appendix challenged by plaintiff. Therefore the motions to strike are denied as moot.

We grant plaintiff's request for judicial notice of out-of-state cases.

## DISPOSITION

The order and judgment are affirmed. The motions to strike are denied. The request for judicial notice is granted. Respondent shall recover costs on appeal. Respondent shall also recover reasonable attorney's fees incurred on appeal (Civ. Code, § 1794, subd. (d)) in an amount to be determined by the trial court.

O'Leary, J., and Moore, J., concurred.

A petition for a rehearing was denied January 14, 2004, and appellant's petition for review by the Supreme Court was denied April 14, 2004.