52 Cal.Rptr.3d 139 (2006)
145 Cal.App.4th 1086
SONY ELECTRONICS INC., Petitioner,
v.
The SUPERIOR COURT of San Diego County, Respondent;
Martin Hapner et al., Real Parties in Interest.
No. D048468.
Court of Appeal of California, Fourth District, Division One.
November 28, 2006.
*140 Luanne Sacks, DLA Piper Rudnick Gray Cary U.S. LLP, San Francisco, CA, for Petitioner.
Thomas D. Mauriello, San Clemente, CA, James Miller, James Shah, pro hac vice, Shepherd, Finkelman, Miller & Shah, LLC, for Real Parties in Interest.
McINTYRE, J.
Sony Electronics Inc. (Sony) petitions for a peremptory writ of mandate directing the trial court to vacate an order certifying a class in this action, which alleges that Sony's Vaio GRX Series Notebook computers suffer from a manufacturing defect. Sony contends that the class as designated by the court is not sufficiently ascertainable to support certification. We agree that the class certified by the trial court is flawed and grant the petition.

FACTUAL AND PROCEDURAL BACKGROUND
In May 2002, Martin Hapner purchased a Vaio GRX550 Notebook computer. He *141 experienced repeated problems with the laptop and in July 2004 filed this action against Sony in the Superior Court of Santa Cruz County. The complaint alleged that Sony had marketed and distributed GRX Series Notebook computers, knowing that the computers had defective memory chip sockets, but without disclosing such defects to consumers; the complaint asserted causes of action for violation of the Unfair Competition Law (Bus. & Prof. Code, § 17200 et seq.), false advertising, violations of the Consumer Legal Remedies Act (Civ.Code, § 1750 et seq.), breach of express warranty and violations of the Song-Beverly Consumer Warranty Act (Civ.Code, § 1790 et seq.). Based on a stipulation of the parties, the case was subsequently transferred to the San Diego County Superior Court.
In October 2005, Hapner filed a motion for certification of a class consisting of "[a]ll persons or entities [in the United States] who purchased Sony Vaio GRX [Series Notebook computers]" but excluding Sony, its affiliates, employees, officers and directors, persons or entities that distribute or sell Vaio GRX laptop computers and the court (the excluded persons). The motion also sought to have the court designate a sub-class consisting of "[a]ll class members who purchased the [GRX Series Notebook computers] in the State of California." The motion argued that the computers suffered from a defect (specifically, the inadequate soldering of connector pins located on their memory slots) which prevented "many" of them from properly "booting" (i.e., starting the operating system when turned on) or utilizing their memory.
In support of his motion, Hapner presented evidence that the GRX500 Series Notebooks manufactured in the spring of 2002 suffered from an annualized failure rate of 10.1 percent from any cause, which was well above Sony's accepted failure rate of less than 1 percent, and that 60 to 70 percent of the 500 series models that were sent to Sony for repair from January to July of 2003 suffered from "no boot" or memory problems. He also introduced an internal company memorandum by a Sony engineer identifying 8 models from the 500 series that were affected by "motherboard related issues" and recommending an extension of the express warranty period for those models; the memorandum identified the affected models as the GRX500, 510, 550, 570 and 590 models manufactured in the spring of 2002, all of which had Japanese motherboards, and the GRX520, 560 and 580 models that were manufactured in the summer of 2002 using Japanese motherboards.
Hapner introduced documents showing that Sony ultimately characterized the memory slot problem as a "design defect" and that the company had its Tokyo-based design engineering team analyze the problem. There was additional evidence that Sony refused to offer repairs to owners of GRX Series Notebooks that were still under warranty even after it issued an internal service bulletin in the summer of 2003 directing that any GRX500, 510, 550, 570 or 590 Notebook returned for in-warranty work be resoldered, irrespective of the reason why the computer was sent for repair. Finally, Hapner also introduced evidence of the problems he had had with his own Notebook computer, Sony's response to his inquiries and the steps he took to have the computer repaired.
Sony opposed the motion, contending Hapner had not shown either that common issues of fact and law predominated or that there was an ascertainable class. On the first point, Sony contended that there was no common soldering defect in all of the GRX Series Notebook computers and that the symptoms of the alleged manufacturing *142 defect could result from numerous causes other than inadequate soldering, thus making individual issues predominant over class-wide issues. It submitted evidence describing possible causes for start-up and memory-related errors like those Hapner experienced, but which resulted from circumstances other than inadequate soldering and argued that there was no evidence the GRX600 and 700 Series Notebook computers suffered from the alleged manufacturing defect. As to the second prerequisite for a class action, Sony argued the proposed class was not ascertainable because it included persons who lacked viable claims (including persons whose computers do not have any defects, persons who had their computers repaired under warranty or persons who bought their computers used, "as is" or in a refurbished condition).
In February 2006, the court declined Hapner's request that it certify a class of all United States purchasers of Vaio GRX Series Notebook computers because of insufficient commonality of claims, but partially granted his motion, certifying the following class and subclasses:
"Class: All persons or entities in the United States who are original purchasers of Sony Vaio GRX Notebook computers from Sony or from an authorized reseller, and in which the memory connector pins for either of the two memory slots were inadequately soldered[,] impeding the recognition of installed memory causing boot failures, and other problems. Excluded from this Class are the following: (1) [Sony] (including its affiliates, employees, officers and directors); (2) persons or entities which distribute or sell Sony Vaio GRX Notebook computers; (3) the Court; and (4) purchasers who had the solder points repaired by Sony at no cost under the express warranty and who no longer experience boot failures and other problems related to inadequate soldering of the memory connector pins.
"Sub-Class A (for purposes of [the] Third Cause of Action [for violations of the Consumer Legal Remedies Act]): All class members who are `consumers' as defined by California Civil Code section 1761[, subdivision ](d).
"Sub-Class B (for purposes of [the] Fifth Cause of Action [for violations of the Song-Beverly Consumer Warranty Act]): All class members who purchased Sony Vaio GRX Notebook computers in the State of California, and who bought their computers primarily for personal, family, or household purposes as defined by California Civil Code section 1791[, subdivision ](a)."
In its ruling, the court expressed concern regarding the manageability of the class as so defined and requested briefing from the parties on that issue.
Hapner filed a brief asserting that the certified class was manageable. He contended that class members would be identifiable through Sony's consumer and service repair databases and additional discovery and that notice would be given by mail to the persons so identified and by publication of notice in print media designed to reach laptop purchasers. He also argued that since the action was structured as an opt-out class action (i.e., one in which class members are included in the class unless they affirmatively opt-out), it was not critical to be able to identify class members at that point in the proceedings. Hapner averred that merits-based discovery would only take an additional five months and that thereafter trial could proceed on a bifurcated basis, with a liability phase (which he planned to base on Sony's own documents, percipient witness testimony by him and Sony representatives and expert testimony) and *143 a damages phase (which he planned to base on expert presentation of data, including annualized failure rates, repair or replacement costs and product purchase price information).
Sony's brief argued that the certified class was unmanageable because the court's definition of the class made class membership dependent on a determination of liability and that such a definition made it impossible to determine who was a member of the class for purposes of sending notice of the action. It also pointed out that even if notice was sent, recipients thereof would not be able to tell whether they were part of the class without having their computers dismantled and analyzed to determine if the computers suffered from inadequate soldering.
Sony reported that there were two other "virtually identical" actions, one in superior court and one in district court, pending against it in San Diego (Lieber v. Sony Electronics, Inc. (Super. Ct. San Diego County, 2005, No. GIC852309); Arabian v. Sony Electronics, Inc. (S.D.Cal.2005, No. 05CV1741)) and contended that Michael Lieber was proposing to represent a class of GRX owners whose symptoms were caused by something other than inadequate soldering unless he could determine that his computer only suffered from such a defect. Sony agreed that only limited additional discovery would be required and that not only was bifurcation as to liability and damages appropriate, but that the court should also bifurcate the legal and equitable claims, with the latter to be tried first.
After considering the briefs and argument by counsel, the court declined to reconsider its certification of the class. It recognized that the class definition was "an imperfect solution" because membership in the class depended on the existence of a defect, but nonetheless concluded that, if Hapner's allegations were true, consumers were entitled to a remedy and the class action provided a superior mechanism for providing such a remedy over the institution of individual lawsuits. The court invited the parties to offer alternative class definitions if discovery or investigation revealed an appropriate alternative. Sony seeks relief, contending that the certification of the class violates due process.

DISCUSSION

1. Introduction

Code of Civil Procedure section 382 authorizes the use of a class action "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court[.]" The party seeking certification has the burden to establish the existence of both an ascertainable class and a well-defined community of interest among class members. (Lockheed Martin Corp. v. Superior Court (2003) 29 Cal.4th 1096, 1103-1104, 131 Cal.Rptr.2d 1, 63 P.3d 913 (Lockheed Martin), citing Washington Mutual Bank v. Superior Court (2001) 24 Cal.4th 906, 913, 103 Cal.Rptr.2d 320, 15 P.3d 1071.)
Whether certification of a class is appropriate is essentially a procedural question that does not depend on the legal or factual meritoriousness of the class claims. (Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 439-440, 97 Cal.Rptr.2d 179, 2 P.3d 27.) However, the trial court's determination of whether it should certify a class will often involve some inquiry, although perhaps a general one, into "the factual and legal issues comprising the plaintiffs cause[s] of action." (Caro v. Procter & Gamble Co. (1993) 18 Cal. App.4th 644, 656, 22 Cal.Rptr.2d 419.) The critical inquiry on a motion for class certification is whether "the theory of recovery *144 advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." (Sav-On Drug Stores, Inc. v. Superior Court (2004) 34 Cal.4th 319, 327, 17 Cal. Rptr.3d 906, 96 P.3d 194.)

2. Standard of Review

A trial court is "ideally situated to evaluate the efficiencies and practicalities of permitting group action" and thus is afforded great discretion in granting or denying certification. (Lockheed Martin, supra, 29 Cal.4th at p. 1106, 131 Cal. Rptr.2d 1, 63 P.3d 913 [citations omitted].) Accordingly, a trial court's decision, if supported by substantial evidence, generally will not be disturbed unless it was based on improper criteria or erroneous legal assumptions. (Washington Mutual Bank v. Superior Court, supra, 24 Cal.4th at p. 914, 103 Cal.Rptr.2d 320, 15 P.3d 1071.)

3. Did the Trial Court Err in Certifying the Limited Class?

Sony challenges the class certified by the trial court for lack of sufficient ascertainability. Ascertainability is required to ensure that all putative class members receive notice of the action and that the resulting judgment will have res judicata effect as to those class members. (See Hicks v. Kaufman & Broad Home Corp. (2001) 89 Cal.App.4th 908, 914, 107 Cal.Rptr.2d 761 (Hicks).) For a class to be considered ascertainable, its members must have a plausible cause of action against the defendant; the failure of multiple prospective class plaintiffs to meet this elementary standard may preclude the existence of an ascertainable class and prevent a class action from being maintained. (American Suzuki Motor Corp. v. Superior Court (1995) 37 Cal.App.4th 1291, 1294-1295, 44 Cal.Rptr.2d 526; see Linder v. Thrifty Oil Co. (2000) 23 Cal.4th 429, 443, 97 Cal.Rptr.2d 179, 2 P.3d 27.)
Ascertainability "goes to the heart of the question of class certification, which requires a class definition that is `precise, objective and presently ascertainable.'" (Global Minerals & Metals Corp. v. Superior Court (2003) 113 Cal.App.4th 836, 858, 7 Cal.Rptr.3d 28, citations omitted, quoting In re Copper Antitrust Litigation (2000) 196 F.R.D. 348, 359.) Thus, whether a class is ascertainable turns on how the proposed class is defined, the size of the proposed class and the means available for identifying class members, matters that are determined from the pleadings, the applicable law and the evidence as to the actual performance of the product. (Global Minerals & Metals Corp. v. Superior Court, supra, 113 Cal.App.4th at p. 849, 7 Cal.Rptr.3d 28.) Although a proposed class plaintiff need not establish the existence and identity of class members at the certification stage of the proceedings, he must show that there are objective criteria by which class members can later be identified and given notice of the proceedings. (Reyes v. Board of Supervisors (1987) 196 Cal.App.3d 1263, 1274-1275, 242 Cal.Rptr. 339; Manual for Complex Litigation, Fourth, § 21.222.)
Sony contends that the partial class certified by the court here is not ascertainable because the class definition is not based on objective criteria, but instead on the issue of ultimate liability, i.e., whether a particular person's Notebook has a soldering defect. It analogizes the court's definition of the class in this case to the proposed class definition that was held to be fundamentally flawed in Intratex Gas Company v. Beeson (Tex.2000) 22 S.W.3d 398 (Intratex) as the basis for its contention.
In Intratex, the plaintiff sought to certify a class action on behalf of producers of natural gas against Intratex Gas Company, *145 an intrastate pipeline company, for its failure to take natural gas from them in ratable proportions as allegedly required by state law. The trial court certified a class consisting of natural gas producers whose gas was purchased by Intratex between 1978 and 1988 in less than ratable proportions. (Intratex, supra, 22 S.W.3d at p. 400.) The certification of the class was affirmed on appeal, but the Texas Supreme Court granted review and reversed, finding that the proposed class was fundamentally flawed because it was not based on objective criteria and thus class membership was not ascertainable until after a determination of liability. (Id. at p. 402.)
The court explained why such a class definition was improper:
"A properly defined class is imperative for a suit to proceed as a class action because the class definition facilitates identifying, at the outset, the individuals affected by the litigation, and protects their interests. First, the definition determines who is entitled to notice, and, [in some class actions,] provides an opportunity to opt out of the class. Failure to define a class precisely creates a substantial risk that putative class members cannot adequately exercise their right to opt out of or remain in the suit before they are bound by a class judgment. [Citation.] Second, the class definition determines the nature of the relief that can be awarded and who is entitled to that relief. [Citation.] Finally, clearly defining the class identifies the plaintiffs who will be bound by the judgment if they lose, and insures that those actually harmed by the defendant's wrongful conduct will receive the relief ultimately awarded. [Citation.]
.....................
"A proposed class definition that rests on the paramount liability question cannot be objective, nor can the class members be presently ascertained; when the class definition is framed as a legal conclusion, the trial court has no way of ascertaining whether a given person is a member of the class until a determination of ultimate liability as to that person is made. A fail-safe class that is based on resolving the ultimate liability issue is bound only by a judgment favorable to [the] plaintiffs but not by a judgment [that is] favorable to [the] defendants [because if the defendants succeed in establishing no liability (such as that the specified defect does not exist), there would be no class members]. [Citation.]" (Intratex, supra, 22 S.W.3d at pp. 403-405; see also 6 Newberg on Class Actions (4th ed.), § 18:46.)
Many, but not all, courts reviewing the certification of a liability-based class have concluded that such a proposed class is improper. (See cases cited in Intratex, supra, 22 S.W.3d at pp. 404-405; also Andrews v. Trans Union Corp. (La.Ct. App.2005) 917 So.2d 463, 470.) In Hicks, supra, 89 Cal.App.4th at pages 914-916, 107 Cal.Rptr.2d 761, the California Court of Appeal for the Second Appellate District was faced with this precise issue and rejected the plaintiffs' proposed liability based class definition as lacking in the requisite ascertainability.
In Hicks, several homeowners brought an action against the developer of their residential subdivision, alleging that their homes had defective concrete foundations resulting from the developer's use of a polypropylene product (Fibermesh) rather than welded wire mesh in constructing the foundations. (Hicks, supra, 89 Cal. App.4th at p. 912, 107 Cal.Rptr.2d 761.) The homeowners asked the trial court to certify a class of all persons who owned homes in the developer's subdivisions in which the foundations had Fibermesh rather than welded wire mesh and had *146 "manifested damage or defect due to the Fibermesh substitution...." On appeal from the trial court's denial of class certification, the Second District concluded that the inclusion of the "manifested damage or defect" component rendered the proposed class definition flawed, but was not fatal because the elimination of this liability based component created an ascertainable class. (Id. at pp. 915-916, 107 Cal.Rptr.2d 761.)
We find that the limited class as certified by the superior court in this case suffers from the same flaw as the proposed class definition in Hicks. As defined by the superior court, the class consists of purchasers of GRX Series Notebook computers that have inadequate soldering of the memory slot connector pins. Unfortunately, because there is no evidence showing that this alleged manufacturing defect is universal to all GRX Series Notebook computers, the class definition requires a merits-based determination in order to establish whether a particular GRX Series Notebook owner is a member of the class. The members of such a class are thus not readily identifiable so as to permit appropriate notice to be given and the definition would not permit persons who receive notice of this action to determine whether they are part of the class. (Compare Wilner v. Sunset Life Ins. Co. (2000) 78 Cal. App.4th 952, 93 Cal.Rptr.2d 413 [holding the trial court erred in sustaining a demurrer to class action allegations where the proposed class consisted of all persons who purchased replacement life insurance policies from the defendant over a specified period of time and alleged that the defendant made the same material misrepresentations, and failed to disclose the same material facts, to all such purchasers]; Vasquez v. Superior Court (1971) 4 Cal.3d 800, 810-811, 94 Cal.Rptr. 796, 484 P.2d 964 [similar].) For these reasons, the class definition is flawed.
Hapner contends that if we find the class definition unworkable, we should use a similar approach as the Hicks court did, modifying the class definition to excise the liability-based component. This suggestion is problematic, however. As noted above, the issue of class certification is fundamentally a question for the trial court, to be determined within its broad discretion. Further, doing as Hapner urges would result in the certification of a class of all United States purchasers of GRX Series Notebook computers, something that he asked for below and that the trial court specifically declined to do based on the lack of sufficient commonality among proposed class members' claims. In the complete absence of evidence that the alleged manufacturing defect exists in all GRX Series Notebook computers (most particularly the absence of evidence that the defect exists in the GRX600 or 700 Series Notebooks), the trial court acted well within its discretion in denying certification of this broader class. (See American Suzuki Motor Corp. v. Superior Court, supra, 37 Cal.App.4th at pp. 1294-1295, 44 Cal.Rptr.2d 526; also Feinstein v. Firestone Tire and Rubber Co. (S.D.N.Y. 1982) 535 F.Supp. 595, 603 [recognizing that where the majority of putative class members have no legally recognizable claim, "the action necessarily metastasizes into [many] individual claims" and class action treatment is inappropriate].) Thus, we grant Sony's petition.
However, although we conclude that the trial court erred in certifying the limited class, we decline Sony's request that we order the superior court to deny the class certification motion outright. There is evidence in the record suggesting that the alleged manufacturing defect affected primarily GRX Series 500 Notebook computers that (1) were manufactured in the spring and summer of 2002 and (2) had *147 motherboards that were manufactured in Japan. Further, the court has not yet considered whether a class might properly be certified for those United States purchasers of GRX Series Notebook computers who have experienced memory or "no boot" problems. For these reasons, we direct the superior court to conduct further proceedings on the issue of whether an alternative class is properly certifiable, on the foregoing bases or otherwise.

DISPOSITION
Let a writ issue directing the superior court to vacate its order granting certification of a limited class and subclasses and to conduct further proceedings on the issue of whether class certification of a different class is appropriate. Each side is to bear its own costs in these proceedings.
WE CONCUR: HUFFMAN, Acting P.J., and HALLER, J.