[No. B192382. Second Dist., Div. Five. Sept. 12, 2007.]

MARISA ISIP, Plaintiff and Respondent, v.
MERCEDES-BENZ USA, LLC, Defendant and Appellant.

COUNSEL

Bannan, Green, Frank & Terzian, C. Forrest Bannan and Mark P. Estrella for Defendant and Appellant.

Alexander Wick, Previn A. Wick; Krohn & Moss and Todd M. Friedman for Plaintiff and Respondent.

OPINION

**KRIEGLER, J.**—In this action for breach of written and implied warranties in the sale of a car, defendant and appellant Mercedes-Benz USA, LLC (MBUSA), appeals from a judgment following a jury trial in favor of plaintiff and respondent Marisa Isip (Isip) in the amount of $20,000. MBUSA contends the trial court erred by refusing its proposed jury instruction on the implied warranty of merchantability. We conclude there was no instructional error and affirm the judgment.

## FACTS AND PROCEDURAL BACKGROUND

On June 21, 2004, Isip purchased a 2004 Mercedes-Benz C320 from a Mercedes-Benz dealership. She paid $46,797.84, with financing, and no downpayment. She received a four-year/50,000-mile bumper-to-bumper warranty. The warranty provided that any authorized center "will make any repairs or replacements necessary to correct defects in material or workmanship arising during the warranty period."

Isip began to experience problems with the car after driving it for 3,900 miles. The problems she experienced during the first year of ownership[1] included the following. The air-conditioning emitted an offensive smell every time it was turned on, giving Isip a headache and making her sister sneeze. The car made a loud tugging noise when she engaged the gear, and it made a clanking noise when Isip released the brake in reverse. When the car automatically shifted gears to pick up speed, the car pulled back, hesitated, and then took off like a slingshot. It also hesitated and pulled back before slowing down. The engine made a loud knocking sound and there were fluid leaks. White smoke came out of the exhaust system.

Isip brought the car in for repairs on six occasions during the first year. At the time of trial, the brakes still made a clanking noise, the transmission still hesitated, and white smoke was still coming out of the exhaust.

Isip cut her driving in half for fear the car was unsafe and would break down. She testified the car was only worth $10,600 to her in its defective condition. On February 9, 2005, Isip's attorney gave written notice to MBUSA, purporting to revoke acceptance of the car.

On March 14, 2005, Isip filed a complaint against MBUSA. In the first cause of action, Isip alleged MBUSA breached written warranties to repair defects in materials or workmanship in violation of the Magnuson-Moss Warranty Act (15 U.S.C. § 2301 et seq.). In the second cause of action, Isip alleged MBUSA breached the implied warranty of merchantability as defined in the Magnuson-Moss Warranty Act, including implied warranties that the vehicle was fit for the ordinary purpose for which it was intended and fit to pass without objection in the trade under the contract description, in that defects rendered the car unfit for the ordinary purpose for which the car was intended. In the third cause of action, Isip alleged MBUSA's tender of the car was substantially impaired to Isip, in violation of section 2310(d) of title 15 of the United States Code. In the fourth cause of action, Isip alleged that, pursuant to the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.), she presented the car to authorized service dealers four times for repairs and the service dealers were unable to repair the defects in a reasonable number of attempts. In the fifth cause of action, Isip alleged that MBUSA breached the implied warranty of merchantability, as defined by the Song-Beverly Consumer Warranty Act, including implied warranties to be fit for the ordinary purpose for which it was intended and fit to pass without objection in the trade under the contract description, in that the car's defects rendered the car unfit for the ordinary use for which the car was intended.

---

[1] The duration of an implied warranty of merchantability is one year if the express warranty is one year or more. (Civ. Code, § 1791.1, subd. (c).)

The trial court instructed the jury substantially in the language of Judicial Council of California Civil Jury Instructions (2006–2007) CACI No. 3210 on the implied warranty of merchantability under both the Magnuson-Moss Warranty Act and the Song-Beverly Consumer Warranty Act. "In order for Maria [*sic*] Isip to prove that MBUSA breached the implied warranty of merchantability, you must find that her vehicle is not fit for the ordinary purpose for which such vehicle is intended. . . . [¶] To establish this claim, Maria [*sic*] Isip must prove all of the following: [¶] 1. That Maria [*sic*] Isip bought a vehicle manufactured and sold by MBUSA. [¶] 2. That at the time of purchase, MBUSA was in the process of selling and manufacturing vehicles; and [¶] 3. That the vehicle was not of the same quality as those generally acceptable in the trade, or was not fit for the ordinary purpose for which such vehicles are used." To this instruction, the trial court added: "Fitness for the ordinary purpose of a vehicle means that the vehicle should be in safe condition and substantially free of defects."[2]

The trial court denied MBUSA's request to add the following language to CACI No. 3210: "The implied warranty of merchantability does not impose a general requirement that goods precisely fulfill the expectations of the buyer; rather, it provides for a minimum level of quality which the law describes as being fit for the ordinary purposes for which such goods are used. In the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic that it renders the vehicle unfit for its ordinary purpose of providing transportation."

The jury was also instructed to determine "under all of [Isip's] claims . . . whether she allowed MBUSA or its authorized repair facilities to have a reasonable number of attempts to repair the problems she alleges to have occurred with the vehicle, or whether MBUSA or its authorized repair facilities exceeded a reasonable number of attempts to repair the problems."

Regarding damages for breach of the implied warranty of merchantability, the trial court instructed the jury: "If you find that MBUSA or its representatives violated its express warranty or the implied warranty, or both, under the Magnuson-Moss Warranty Act or the implied warranty of merchantability under Song-Beverly, then [Isip] is entitled to recover the following as damages: [¶] The difference at the time of purchase between the value of the vehicle and the value it would have if it had been as warranted, unless special circumstances show damages in a different amount. Such special circumstances may include any wear and tear or damage to the vehicle to the date of trial."

---

[2] We find no support in the record for MBUSA's assertion that Isip proposed this additional language.

The jury returned the following verdict. MBUSA breached the implied warranty of merchantability, which caused $20,000 in damages to Isip. Under the Magnuson-Moss Warranty Act, MBUSA breached the written warranty by failing to repair the car after a reasonable number of repair attempts, but this breach of written warranty caused no monetary damage to Isip. Under the Song-Beverly Consumer Warranty Act, the car did not have defects covered by the warranty that substantially impaired its use, value, or safety. On April 19, 2006, judgment was entered in the amount of $20,000 for breach of the implied warranty of merchantability under the Magnuson-Moss Warranty Act and the Song-Beverly Consumer Warranty Act and in the amount of $0 for breach of express warranty under the Magnuson-Moss Warranty Act.

## DISCUSSION

MBUSA contends the jury was not correctly instructed on the implied warranty of merchantability. MBUSA does not contend that the instruction given substantially in the language of CACI No. 3210 was erroneous, only that the trial court erred in rejecting MBUSA's special instruction and adding language that "[f]itness for the ordinary purpose of a vehicle means that the vehicle should be in safe condition and substantially free of defects." MBUSA contends that its special instruction correctly states the law and the trial court's does not.

The legal adequacy of jury instructions is a legal issue subject to the de novo standard of appellate review. (*Sander/Moses Productions, Inc. v. NBC Studios, Inc.* (2006) 142 Cal.App.4th 1086, 1094–1095 [48 Cal.Rptr.3d 525]; *National Medical Transportation Network v. Deloitte & Touche* (1998) 62 Cal.App.4th 412, 439 [72 Cal.Rptr.2d 720].)

█ The Magnuson-Moss Warranty Act provides a right of action for a consumer who is damaged by a warrantor's failure to comply with an implied warranty that arises under state law. (15 U.S.C. §§ 2301(7), 2310(d)(1).) In California, an implied warranty of merchantability arises under the Song-Beverly Consumer Warranty Act: "Unless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable." (Civ. Code, § 1792.) The " '[i]mplied warranty of merchantability' or 'implied warranty that goods are merchantable' means that the consumer goods meet each of the following: [¶] (1) Pass without objection in the trade under the contract description. [¶] (2) Are fit for the ordinary purposes for which such goods are used. . . ." (Civ. Code, § 1791.1, subd. (a).)

▮ The Song-Beverly Consumer Warranty Act provides a right of action for a buyer to recover damages and other relief when there has been a breach of the implied warranty of merchantability. (Civ. Code, § 1794, subd. (a).) Civil Code section 1794, subdivision (b)(2) provides that, where the buyer accepts the goods, damages include damages available under Commercial Code sections 2714 and 2715 (incidental and consequential damages). Commercial Code section 2714 provides in pertinent part: "(2) The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

The instructions given by the trial court, and that proposed by MBUSA, are similar in one respect. Both instructions indicate the warranty of merchantability requires that the vehicle was fit for the ordinary purpose for which it was intended. The primary difference in the instructions is the trial court's inclusion of language defining a vehicle as being fit for its ordinary purpose if it is "in safe condition and substantially free from defects," as opposed to MBUSA's proposed language that a vehicle is unfit "only if the vehicle manifests a defect that is so basic that it renders the vehicle unfit for its ordinary purpose of providing transportation."

MBUSA finds support for its proposed instruction in descriptive language in *American Suzuki Motor Corp. v. Superior Court* (1995) 37 Cal.App.4th 1291, 1296 [44 Cal.Rptr.2d 526] (*American Suzuki*). "Courts in other jurisdictions have held that in the case of automobiles, the implied warranty of merchantability can be breached only if the vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." (*Ibid.*)

The above quoted language in *American Suzuki* was from a much different context than that presented in the instant appeal. The issue in *American Suzuki* was whether the trial court had properly certified for class treatment the plaintiffs' claims that vehicles they had purchased were prone to rolling over and therefore breached the implied warranty of merchantability. (*American Suzuki, supra,* 37 Cal.App.4th at pp. 1294–1299.) However, because the majority of the plaintiffs' vehicles had not rolled over, the claim was too speculative to warrant class certification. It was in the context of discussing cases in which *no damage had been suffered* that the court wrote that a vehicle violates the implied warranty of merchantability only if the vehicle is unfit for its ordinary purpose of providing transportation. (*Id.* at pp. 1296–1297.)

In reaching its conclusion, the court in *American Suzuki* noted that the plaintiffs relied on a "handful of cases" which involved "a product that actually failed." (*American Suzuki, supra,* 37 Cal.App.4th at p. 1297.) The court rejected the argument that class certification was proper because "the vast majority" of the Suzuki vehicles " 'did what they were supposed to do for as long as they were supposed to do it.' " (*Id.* at p. 1298.)

The discussion in *American Suzuki* does not support MBUSA's proposed jury instruction for two distinct reasons. First, unlike *American Suzuki,* which essentially was a case at the pleading stage, the instant case is before us after trial upon a set of facts supporting a finding that there was an implied breach of the warranty of merchantability. It is noteworthy that MBUSA does not contend on appeal that the record lacks substantial evidence to support a finding of a breach of the implied warranty. Second, the language in *American Suzuki* which MBUSA drafted into its proposed jury instruction was a general discussion of the law, and was not intended to be incorporated into a pattern jury instruction.

We therefore turn to whether the language added to CACI No. 3210 by the trial court was correct. As defined in the Song-Beverly Consumer Warranty Act, "an implied warranty of merchantability guarantees that 'consumer goods meet each of the following: [¶] (1) Pass without objection in the trade under the contract description. [¶] (2) Are fit for the ordinary purposes for which such goods are used. [¶] (3) Are adequately contained, packaged, and labeled. [¶] (4) Conform to the promises or affirmations of fact made on the container or label.' (Civ. Code, § 1791.1, subd. (a).)" (*Mocek v. Alfa Leisure, Inc.* (2003) 114 Cal.App.4th 402, 406 [7 Cal.Rptr.3d 546].) Unlike an express warranty, "the implied warranty of merchantability arises by operation of law" and " 'provides for a minimum level of quality.' " (*American Suzuki, supra,* 37 Cal.App.4th at pp. 1295–1296.) "The California Uniform Commercial Code separates implied warranties into two categories. An implied warranty that the goods 'shall be merchantable' and 'fit for the ordinary purpose' is contained in California Uniform Commercial Code section 2314. Whereas an implied warranty that the goods shall be fit for a particular purpose is contained in section 2315. [¶] Thus, there exists in every contract for the sale of goods by a merchant a warranty that the goods shall be merchantable. The core test of merchantability is fitness for the ordinary purpose for which such goods are used. (§ 2314.)" (*Atkinson v. Elk Corporation of Texas* (2006) 142 Cal.App.4th 212, 228 [48 Cal.Rptr.3d 247], fn. omitted; see also *Hauter v. Zogarts* (1975) 14 Cal.3d 104, 117–118 [120 Cal.Rptr. 681, 534 P.2d 377].)

■ The instruction given by the trial court in this action fairly sets forth the principles in the above cited authorities. Defining the warranty in terms of a vehicle that is "in safe condition and substantially free of defects" is consistent with the notion that the vehicle is fit for the ordinary purpose for which a vehicle is used. On the other hand, MBUSA's attempt to define a vehicle as unfit only if it does not provide transportation is an unjustified dilution of the implied warranty of merchantability. We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose.

To the extent MBUSA argues that its special instruction was correct because there was no issue in the case whether the car would "pass without objection in the trade," we disagree with the argument. While Isip did not mention the "pass without objection in the trade" prong of the implied warranty in her argument to the jury, she presented evidence concerning it at trial and the jury was instructed on it. In fact, MBUSA asked the court to instruct on it. MBUSA did not object that such an instruction was not warranted by the evidence. Indeed, evidence was adduced that malodorous air-conditioning, a leaking transmission, transmission hesitation, and Isip's clanking brake problem were not normal for a car.

We reject MBUSA's argument that the additional language in the trial court's instruction was improper because it would entitle a buyer to full rescission damages without having to give the dealer an opportunity to repair if the car had any defects, no matter how trivial. The measure of damages the jury was instructed on for breach of the implied warranty was the difference in the value of the car as warranted and as delivered. The jury was instructed rescission damages (return of the purchase price less value of use) could be awarded only if MBUSA "did not repair substantial defects in the vehicle to match the written warranty after a reasonable number of opportunities." MBUSA does not complain about this instruction. MBUSA has not established reversible error.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to Isip.

Turner, P. J., and Armstrong, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 28, 2007, S157543.