Filed 10/1/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SIMGEL CO., INC., et al., | B292458 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC645632) |
| v. | |
| JAGUAR LAND ROVER NORTH AMERICA, LLC, | |
| Defendant and Appellant. | |

APPEALS from a judgment and orders of the Superior Court of Los Angeles County.  Michael L. Stern, Judge.  Affirmed.

Law Office Natan Davoodi, Natan Davoodi; Law Office of Joseph S. Socher and Joseph S. Socher for Plaintiffs and Appellants.

Bowman and Brooke, Brian Takahashi, Theodore Dorenkamp III, and Jennifer T. Persky for Defendant and Appellant.

_____

## SUMMARY

The jury in a "lemon law" case answered special verdict questions that determined a car manufacturer (defendant) had no liability for breach of express warranty or for breach of the implied warranty of merchantability. (Civ. Code, § 1790 et seq., the Song-Beverly Consumer Warranty Act). But there was a mistake in the special verdict form that neither counsel nor the court detected until long after the jury was discharged. The verdict form did not tell the jury if they found no breach of warranty, they should stop and answer no further questions. So the jury went on to a subsequent question, which asked if plaintiffs revoked acceptance within a reasonable time, and the jury answered, "Yes." The jury also went on to answer questions about damages.

Judgment was entered on the special verdict, awarding damages to plaintiffs. The clerk of the court served notice of entry of the judgment, and 20 days later, defendant filed a motion to vacate the judgment and enter a different judgment in its favor, and alternatively for judgment notwithstanding the verdict. The trial court granted defendant's motion. Plaintiffs appealed, and defendant filed a protective cross-appeal.

We affirm judgment for defendant.

## FACTS

In May 2014, Emanuel Sasoones and his business, Simgel Co., Inc. (plaintiffs), leased a new convertible 2014 Jaguar F-Type automobile from Galpin Jaguar Lincoln, Inc. for use by Mr. Sasoones's son, Jonathan. The lease was for three years, with a mileage allowance of 15,000 miles.

Two years later, on May 23, 2016, after about 10,000 miles, Jonathan had the car towed to the dealer because of water

2

leaking in through the roof after a carwash. (The dealer provided a free towing service, so Jonathan did not personally take the car to the dealer.) Jonathan also complained that, when rolling up the driver's and passenger's windows, they bounced back open. (This refers to the car's "one-touch" feature, allowing the user to open or close the windows by pressing and immediately releasing the window switch, rather than pressing and holding the switch for the entire time the window is being opened or closed.)

With respect to the convertible roof leak, the technician, John Naylor, found the window seals were deformed, and the bolts in the brackets that held the seals in place were "lock[ed] too tight" at the manufacturer. He replaced the seals and, after doing so, confirmed no leak.

With respect to the "one-touch" feature, Mr. Naylor could not duplicate Jonathan's complaint. But because there were now new seals, he "just reset the windows," recalibrating them by holding the switch, and found "no fault afterwards. It was still working correctly."

According to Jonathan, after the May 2016 replacement of the window seals, "there was no leak after that."

In August 2016, at over 11,000 miles, Jonathan had the car towed to the dealer a second time, again complaining the windows bounced open when he tried to close them with the one-touch feature. The technician, Braulio Contreras, tried verifying the complaint several times, but the windows were "operating fully every time." He "just cleaned up the glass, the channel, lubed it a little bit and checked it again. Everything was good." Mr. Contreras testified that one can "still manually close the window even if there is a complaint of a one-touch bounce issue."

3

Two months later, in November 2016, at almost 13,000 miles, Jonathan had the car towed in again for the same complaint. This time, the repair order shows the technician verified the complaint. He connected a diagnostic computer to look for fault codes but found none. He removed the door panel, to make sure internally everything was working properly, and updated and programed the door modules. All electrical connections and regular cables were operating smoothly. He inspected and lubricated the regulators, and recalibrated the windows. According to the repair order, the windows "work[ed] to specs after repair."

Four months later, in March 2017, at almost 14,000 miles, Jonathan had the car towed in again for the same complaint. The technician replaced the window regulators, updated the door module software, and adjusted the glass. He verified the windows were operating properly after he replaced the regulators, and the shop foreman verified it as well.

In May 2017, at the end of the lease term, plaintiffs returned the car, with mileage of 14,663.

Meanwhile, on January 4, 2017, between the third and fourth visits to the dealer, plaintiffs filed this lawsuit. The operative first amended complaint filed in February 2017 alleged violations of the lemon law against defendant Jaguar Land Rover North America, LLC. The first cause of action was based on defendant's failure to conform the car to express warranties and failure to issue a refund or replacement. The second alleged a breach of the implied warranty of merchantability, asserting the defect "substantially reduces [the vehicle's] safety and performance," and plaintiffs were entitled under the lemon law to rescind the purchase contract. Plaintiffs alleged they were

entitled to restitution of all money paid, and that by the complaint they again "hereby reject[] and revoke[] acceptance of the automobile." Plaintiffs alleged a third cause of action against the dealer, Galpin Jaguar Lincoln-Mercury, Inc., for negligence. (At trial, the court granted a motion for nonsuit on the negligence claim.)

A jury trial resulted in a special verdict finding the car did not have a window defect covered by the written warranty that substantially impaired use, value or safety. The verdict form then instructed the jury to answer question 10, which asked whether the car had a window defect in the first year of plaintiffs' ownership that rendered it not fit for the ordinary purpose of providing transportation. The jury answered, "No."

After these findings, because of a mistake in the instructions in the special verdict form following the "no" answer to question 10 (as we will discuss, *post*), the jury went on to answer other questions that concerned damages for breach of the implied warranty of merchantability. Specifically, the jury was asked if plaintiffs "revoke[d] acceptance within a reasonable time after they discovered or could have discovered, the window defect," and answered "Yes." The jury then answered the question, "What are plaintiff's recission damages?" and found those damages were $26,023.68.

The special verdict was read and handed to counsel to examine. Both said they had an adequate time to review the verdict form. Plaintiffs' counsel requested the jury be polled. This was done. On the revocation of acceptance question, only eight jurors confirmed their answer was "yes"; three said "no" and one juror did not know what his or her verdict was. The court sent the jury back to the jury room. When they returned, counsel

5

examined the verdict form again and confirmed it was unchanged. The jury was again polled on the revocation of acceptance question, and this time all 12 confirmed that was their verdict. After the jury was dismissed, the court asked counsel if the clerk could enter the judgment on the verdict, and whether counsel had "anything further on the verdict form or otherwise by written Motion or appropriate proceeding." Neither counsel offered any objections.

The next day, June 8, 2018, judgment on the special verdict was entered, awarding plaintiffs $26,023.68. That same day, the clerk served notice of entry of judgment on the parties.

On June 28, 2018, defendant filed a motion to vacate the judgment or, in the alternative, for judgment notwithstanding the verdict (JNOV). Defendant argued, among other things, there was no legal basis for the judgment because of the jury's factual findings that there was no window defect substantially impairing the car's use, value or safety, and no window defect in the first year of ownership that rendered the car not fit for the ordinary purpose of providing transportation. Alternatively, JNOV was proper, defendant argued, because plaintiffs presented no evidence the window defect existed during the first year of the lease, so defendant's nonsuit motion should have been granted on the breach of implied warranty question.

Plaintiffs' opposition contended an implied warranty is not limited to one year; there was substantial evidence the car had defects during the implied warranty period; a breach of implied warranty does not require a car to be unfit for the ordinary purpose of providing transportation; there was substantial evidence the car did not measure up to promises made by the manufacturer or dealer; and defendant waived any defect in the

6

verdict.  (There is no dispute over the jury's verdict for the defense on the express warranty claim.)

A few weeks later, on July 25, 2018, defendant filed an ex parte application for relief under Code of Civil Procedure section 473, concerned that its motion to vacate the judgment and for JNOV had been filed a few days late.  Defendant also filed an ex parte application to shorten time for hearing on the motion to vacate.  The trial court granted both motions the same day, and set a hearing date for August 2, 2018.

After the hearing, the trial court took the matter under submission and later that day granted defendant's motion, on both alternative bases.  The court found the legal basis for the decision was "erroneous in that it is not supported by the facts of the case because the jury did not find any substantially impairing nonconformity and/or any defect rendering the subject vehicle unfit for its ordinary purpose.  Because of this finding, there is no legal basis for jury to then find that the revocation had been timely."  The court also found the original judgment was not consistent with the special verdict, and the jury had "mistakenly awarded damages to plaintiffs after finding no liability, for which this Court has the authority to correct said mistake."  The court vacated the original judgment and ordered entry of judgment for defendant.  The court also found, after viewing the evidence in the light most favorable to plaintiffs, "there is no substantial evidence to support the jury's verdict in plaintiffs' favor," and ordered judgment be entered in favor of defendant notwithstanding the verdict.

Defendant served notice of entry of judgment, and plaintiffs filed a timely notice of appeal.  Defendant filed a protective cross-appeal from the court's failure to grant defendant's motion for

partial nonsuit on the implied warranty claim and from the original judgment in plaintiffs' favor. We do not need to consider the cross-appeal since we affirm the judgment for defendant.

## DISCUSSION

Plaintiffs contend the judgment for defendant must be reversed because (1) defendant's motion to vacate was filed beyond the applicable jurisdictional deadlines; (2) the jury's verdict was not inconsistent with the original judgment; and (3) there was substantial evidence supporting the original judgment. None of these contentions is correct.

## 1.     The Jurisdictional Issue

A motion to vacate the judgment and enter a different judgment (Code Civ. Proc., § 663) must be filed "[w]ithin 15 days of the date of mailing of notice of entry of judgment by the clerk of the court *pursuant to Section 664.5*, or service upon him or her by any party of written notice of entry of judgment, or within 180 days after the entry of judgment, whichever is earliest." (§ 663a, subd. (a)(2), italics added.) The phrase we emphasize, "pursuant to Section 664.5," is the key to our decision that defendant's motion was timely. We find the clerk did not serve notice of entry of judgment pursuant to section 664.5. (Further undesignated statutory references are to the Code of Civil Procedure.)

The same time deadlines to file a motion to vacate the judgment also apply to a JNOV motion (§ 629, subd. (b), § 659, subd. (a)(2)), and a new trial motion (§ 659, subd. (a)(2)). In the case of a new trial motion, these time limits are jurisdictional (*Maynard v. Brandon* (2005) 36 Cal.4th 364, 372), and section 473 "does not offer relief from mandatory deadlines deemed jurisdictional in nature." (*Maynard,* at p. 372 [new trial

8

motion].)  This "jurisdictional in nature" principle has also been applied to a motion to vacate a judgment under sections 663 and 663a.  (*Advanced Building Maintenance v. State Comp. Ins. Fund* (1996) 49 Cal.App.4th 1388, 1392-1394.)

Here, the clerk of the court served a notice of entry of judgment, and defendant did not file its motion to vacate the judgment or for JNOV within 15 days.  But the clerk's notice of entry of judgment did not start the 15-day period running, because the clerk's notice did not comply with explicit directions from our Supreme Court in *Van Beurden Ins. Services, Inc. v Customized Worldwide Weather Ins. Agency, Inc.* (1997) 15 Cal.4th 51 (*Van Beurden*).

*Van Beurden* held that "to qualify as a notice of entry of judgment under Code of Civil Procedure section 664.5, the clerk's mailed notice must affirmatively state that it was given 'upon order by the court' or 'under section 664.5,' and a certificate of mailing the notice must be executed and placed in the file."  (*Van Beurden, supra,* 15 Cal.4th at p. 64; *ibid.* ["To avoid uncertainty, we clarify that—subject to the specified exceptions under Code of Civil Procedure section 664.5, subdivisions (a) and (b), which make notice by the clerk mandatory—when the clerk of the court mails a file-stamped copy of the judgment, it will shorten the time for ruling on the motion for a new trial only when the order itself indicates that the court directed the clerk to mail 'notice of entry' of judgment."].)

The *Van Beurden* principle is recited again in *Palmer v. GTE California, Inc.* (2003) 30 Cal.4th 1265, 1277 ("To be service 'pursuant to Section 664.5' (§§ 659, 660) the notice of entry of judgment mailed by the clerk must 'affirmatively state' it is given ' "upon order by the court" or "under section 664.5" ' ";

9

"[o]therwise, the time limits . . . are triggered by service on the moving party of 'written notice' of the 'entry of judgment.' (§§ 659, 660.)"). This means a clerk's notice of entry of judgment must state, in so many words, that it is given "upon order of the court" or "under section 664.5" in order to trigger the time to file a motion to vacate the judgment or for JNOV.

Here, the clerk's notice of entry of judgment did not affirmatively state it was given "upon order by the court," or "under section 664.5." The form served by the clerk is a Los Angeles Superior Court multi-purpose form used for notice of entry of judgment or dismissal or other order. In the lower right-hand corner, in tiny font, there are references to section 664.5, section 1013a (on proof of service by mail), and two court rules (rule 8.104 on the time to appeal and another rule that has been repealed). The citation to section 664.5 may be on the form, for all we know, to reflect instances where notice of entry of judgment by the clerk is mandatory, as mentioned in *Van Beurden.* Whatever the reason, because the notice does not affirmatively state it was given "upon order of the court," or "under section 664.5," or anything similar, and because the record nowhere reflects that the court ordered the clerk to serve notice of entry of judgment, we cannot assume the court did so.

We cannot guess whether the reference to section 664.5 on the form is meant to imply the court ordered the clerk to serve notice of entry of judgment. "[I]n a matter involving jurisdictional restrictions on the right to appeal, we should not engage in 'guesswork' concerning whether the trial court actually ordered the clerk to mail notice of entry of judgment." (*Van Beurden, supra,* 15 Cal.4th at pp. 62-63.) And, since neither

party served a notice of entry of judgment, defendant's motion to vacate was timely.

## 2.     The Inconsistent Verdict Issue

Plaintiffs contend the jury's verdict was consistent with the judgment of liability for breach of implied warranty.  We do not agree.

A judgment may be set aside, and another judgment entered, when there is an "[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts," or when a judgment is "not consistent with or not supported by the special verdict."  (§ 663.)  Under either formulation, that is what happened here.  The original judgment rests on an erroneous legal basis, and it is not consistent with the facts found by the jury.

We begin with a few basic principles.

Under the lemon law, the implied warranty of merchantability means that consumer goods "(1)  Pass without objection in the trade under the contract description.  [¶]  (2)  Are fit for the ordinary purposes for which such goods are used.  [¶]  (3)  Are adequately contained, packaged, and labeled.  [¶]  (4)  Conform to the promises or affirmations of fact made on the container or label."  (Civ. Code, § 1791.1, subd. (a).)  "[I]n no event shall such implied warranty have a duration of less than 60 days *nor more than one year following the sale* of new consumer goods to a retail buyer."  (*Id.*, subd. (c), italics added.)

A buyer who is damaged by a breach of implied warranty has two possible measures of those damages:  one where the buyer has rightfully rejected or "justifiably revoked acceptance" of the goods (Civ. Code, § 1794, subd. (b)(1) & Cal. U. Com. Code, § 2711), and one where the buyer has accepted the goods

11

(Civ. Code, § 1794, subd. (b)(2) & Cal. U. Com. Code, § 2714).  If the buyer has "justifiably revoke[d] acceptance," he may "recover[] so much of the price as has been paid," among other remedies not relevant here.  (Cal. U. Com. Code, § 2711, subd. (1).)  A buyer who has accepted goods may revoke acceptance of a commercial unit "whose nonconformity substantially impairs its value to him."  (*Id.,* § 2608, subd. (1).)  If the buyer has accepted the goods, the measure of damages for breach of warranty "is the difference . . . between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount" (Cal. U. Com. Code, § 2714, subd. (2)), and incidental and consequential damages also may be recovered (*id.,* subd. (3)).

In this case, the jury answered the only question (question 10) concerning defendant's liability for breach of implied warranty in defendant's favor—that is, the 2014 Jaguar did *not* have "a window defect in the first year of plaintiffs' ownership which rendered it not fit for the ordinary purpose of providing transportation."  There was no other question on the verdict form relating to whether the implied warranty was breached.  The ensuing questions related to the damages plaintiffs would be entitled to recover if defendant *had* breached the implied warranty.  *If* defendant had breached the implied warranty of merchantability, damages could be measured in one of the two ways we have just described, depending on whether plaintiffs justifiably revoked acceptance.

It is apparent to us that, after answering the question on liability in the negative, the special verdict form should have instructed the jury to "stop here," and have the presiding juror

12

sign and date the verdict form.  Instead, since the verdict form did not instruct the jurors to stop, they continued, answering the questions directed at determining damages.  But there can be no damages where there is no liability.  This was a mistake that neither counsel nor the court noticed before the jury was discharged.

Section 663 authorizes a trial court to vacate "[a] judgment or decree not consistent with or not supported by the special verdict," and enter a different judgment.  (§ 663, subd. 2.)  That is what the court did here.  "A trial court has the authority to correct a mistaken verdict under section 663." (*Shapiro v. Prudential Property & Casualty Co.* (1997) 52 Cal.App.4th 722, 728-729, citing *Woodcock v. Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 456-457 (*Woodcock*).)  "The judge has the responsibility to interpret the verdict ' "from its language considered in connection with the pleadings, evidence and instructions." ' " (*Shapiro,* at p. 729, quoting *Woodcock*, at p. 456.)

Plaintiffs argue on appeal that question 10 "was improper and irrelevant to the determination of liability" because, they say, the language does not reflect the correct legal standard.  They say the appropriate question was whether the vehicle was in a "safe condition and substantially free of defects," a standard used in a jury instruction given in *Isip v. Mercedes-Benz USA, LLC* (2007) 155 Cal.App.4th 19, 27 (*Isip*).)  Plaintiffs say the jury's answer to question 10 "should be disregarded" and cannot be the basis for setting aside the original judgment.  Plaintiffs are wrong for many reasons.

In the trial court, plaintiffs never proposed the language they now say should have been used in the verdict form.  The

13

language plaintiffs proposed to use in the special verdict form, which the trial court rejected, had no support in the evidence.

Plaintiffs objected to question 10, proposing instead that question 10 ask, "Was the 2014 Jaguar F-Type of the same quality as those generally acceptable in the trade?"  The trial court rejected that request for lack of any evidence on the point, stating, among other things, that "there is no expert testimony or other admitted or admissible testimony regarding the quality of the subject window versus another comparison."  On appeal, plaintiffs cite to no evidence to suggest the trial court was mistaken on this point.

After that, plaintiffs told the court that question 10 should ask, "Did the Jaguar F-Type measure up to the promises or facts by the manufacturer and-or dealer?"  The court rejected that request, stating:  "We don't have a container or label, we don't have a comparison between this automobile window system and any other for this model.  There is no testimony regarding the same."  Further, "We don't have the promises or facts.  That is what I keep saying.  I said it at least ten times in the last half hour."  And, "Absolutely no testimony, to my recollection . . . regarding [Jonathan Sasoones] testifying regarding any other representation regarding the windows prior to lease of the automobile or any comparison between the window system on this particular automobile and any other of the same model year by this manufacturer."

And finally, plaintiffs asked that question 10 read, "Did the 2014 Jaguar F-Type have a window defect in the first year of plaintiffs' ownership?"—that is, omitting "which rendered it not fit for the ordinary purpose of providing transportation."  That, of

14

course, would have been a meaningless question, completely devoid of a standard.

In short, plaintiffs did not propose the question they now say should have been asked, and on this record, there was no evidence or law to support the questions they did propose.

Further, plaintiffs' reliance on *Isip* for the proposition that question 10 reflected an incorrect legal standard is misplaced. *Isip* involved the defendant's challenge to the trial court's jury instruction that " '[f]itness for the ordinary purpose of a vehicle means that the vehicle should be in safe condition and substantially free of defects.' " (*Isip, supra,* 155 Cal.App.4th at p. 23.) The defendant challenged that instruction, saying the trial court should have instructed that the implied warranty for a vehicle can be breached "*only* if [the vehicle] does not provide transportation." (*Id.* at p. 27, italics added.) *Isip* rejected that contention, finding that a car in a " 'safe condition and substantially free of defects' " was "consistent with the notion that the vehicle is fit for the ordinary purpose for which a vehicle is used." (*Id.* at p. 27.)

Thus *Isip* stated: "We reject the notion that merely because a vehicle provides transportation from point A to point B, it necessarily does not violate the implied warranty of merchantability. A vehicle that smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose." (*Isip, supra,* 155 Cal.App.4th at p. 27.) The court further pointed out the plaintiff had presented evidence the car would not " 'pass without objection in the trade,' " adducing evidence "that malodorous air-conditioning, a leaking transmission, transmission hesitation, and [the plaintiff's] clanking brake problem were not normal for a car." (*Ibid.*)

This case is nothing like *Isip*. Here, unlike in *Isip*, plaintiffs presented *no* evidence that the Jaguar was not of the same quality as those generally acceptable in the trade. Nor was there an evidentiary basis for asking the jury whether the car "measure[d] up to the promises or facts by the manufacturer and/or dealer," as the trial court likewise found (and as we discuss further *post*, in connection with the court's JNOV ruling).

As *Woodcock* tells us, we interpret a special verdict " 'from its language considered in connection with the pleadings, evidence and instructions.' " (*Woodcock, supra,* 69 Cal.2d at p. 456.) The only conceivable formulation was the one the court used: whether the car had a window defect that rendered it "not fit for the ordinary purpose of providing transportation." While that formulation might have been inadequate under other evidentiary circumstances, such as those in *Isip*, there is no basis for finding it inappropriate in this case.

Next, plaintiffs assert that when the jury went on to find plaintiffs "revoke[d] acceptance within a reasonable time after they discovered or could have discovered, the window defect," they necessarily found there *was* a defect that breached the implied warranty of merchantability. That is not correct. That is not only sheer speculation, it is contrary to the jury's express finding the car did *not* have a window defect in the first year of plaintiffs' ownership that rendered it not fit for the ordinary purpose of providing transportation. (Cf. *Zagami, Inc. v. James A. Crone, Inc.* (2008) 160 Cal.App.4th 1083, 1092 (*Zagami*) ["[a] court reviewing a special verdict does not infer findings in favor of the prevailing party"].) In any event, the mere existence of a defect does not equate to a breach of the implied warranty of merchantability. (See *Brand v. Hyundai Motor America* (2014)

16

226 Cal.App.4th 1538, 1546 (*Brand*) ["a new car need not 'be perfect in every detail'; rather, its implied merchantability 'requires only that a vehicle be reasonably suited for ordinary use' "].)

Finally, plaintiffs assert that defendant prepared the special verdict form and failed to object before discharge of the jury, so defendant "has waived any objection to any alleged ambiguity in the verdict." But defendant does not claim the special verdict was ambiguous. Defendant claims the original judgment was not consistent with the special verdict. In any event, "[w]aiver is not found where the record indicates that the failure to object was not the result of a desire to reap a 'technical advantage' or engage in a 'litigious strategy.' " (*Woodcock, supra,* 69 Cal.2d at p. 456, fn. 2.)

The mistake in the verdict form was inadvertent and went unnoticed by both counsel and the court, despite the efforts of all to carefully consider the verdict form before it was submitted to the jury and to poll the jury on their verdict before they were discharged. That it was an inadvertent mistake is evidenced by the fact that even plaintiffs' own proposed special verdict form, after asking the question on liability for implied warranty (whether the car was "of the same quality as those generally acceptable in the trade") told the jury, "If you answered yes, stop here, answer no further questions, and have the presiding juror sign and date this form."

## 3. The JNOV Issue

Defendant sought JNOV in the alternative, arguing that even if the verdict could be construed in plaintiffs' favor, JNOV should be entered because plaintiffs failed to produce substantial evidence that the window defect existed during the first year of

the lease. The trial court ordered judgment entered for defendant on this basis as well, finding "there is no substantial evidence to support the jury's verdict in plaintiffs' favor." That ruling was also correct.

A judgment notwithstanding the verdict must be rendered "whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made." (§ 629, subd. (a).) That is the case here. Plaintiffs insist otherwise, proffering two arguments, both incorrect.

Plaintiffs' first argument involves the fourth factor required under Civil Code section 1791.1 for consumer goods to be merchantable: the goods must "[c]onform to the promises or affirmations of fact made on the container or label." (§ 1791.1, subd. (a)(4).) This language is reflected in the CACI form instruction. In this case, the instruction was modified to state that breach of implied warranty could be established if plaintiffs proved the Jaguar "did not measure up to the promises or facts *by the manufacturer and/or dealer*." (Italics added.) But—as we have already seen—the trial court rejected plaintiffs' proposal to ask the jury that question, because there was no evidence to support it: "no testimony regarding the same," and "[w]e don't have the promises or facts."

Plaintiffs insist there *is* such evidence, and point to "promises" that Jonathan Sasoones testified about, in the form of the owner's manual. (The manual explains on page 55 how the one-touch window function works ("press (or pull) the switch briefly to open (or close) a window. Window travel can be stopped at any time by operating the switch again"). Plaintiffs also cite Jonathan's testimony that the "specs" sticker on the car (listing its features and suggested retail price) did not tell him, and

18

nobody at the dealer told him, "that the windows would not work." This is not evidence of promises or affirmations of fact made on a container or label.

An owner's manual or a "specs" sticker may be relevant to express warranty claims, but neither has anything to do with "promises or affirmations of fact made on the container or label" (Civ. Code, § 1791.1, subd. (a)(4)), or with "promises or facts by the manufacturer and/or dealer," for purposes of establishing a breach of implied warranty. For one thing, Jonathan "never looked at the owner's manual regarding window operation." For another, we cannot comprehend how a dealer's failure to tell him "the windows would not work" can be characterized as a "promise[] or affirmation[] of fact." (*Ibid*.) The implied warranty of merchantability arises by operation of law and is a "bulwark against fundamental defects." (*Brand, supra,* 226 Cal.App.4th at pp. 1545, 1550 [dangerous safety flaw].) It does not arise from an owner's manual describing how car windows work, or from something a dealer has not said.

Plaintiffs' second contention is that, although it is undisputed the window defect did not manifest itself until two years after the lease began, there was evidence the window defect was "latent" and existed at the time of manufacture, so that the one-year maximum duration of the implied warranty of merchantability (Civ. Code, § 1791.1, subd. (c)) does not apply. (See *Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1304 ["The implied warranty of merchantability may be breached by a latent defect undiscoverable at the time of sale."].)[1]

---

[1] Defendant asks us to take judicial notice of the legislative history of Civil Code section 1791.1. Defendant contends it shows the Legislature intended the one-year maximum duration to be a

19

The evidence plaintiffs cite does not support this second contention. They are referring to Mr. Naylor's testimony concerning the successful repair of Jonathan's first complaint of a roof leak, during the car's first visit to the dealer, not repair of Jonathan's complaint about the one-touch feature (a complaint Mr. Naylor could not duplicate). In correcting the roof leak, Mr. Naylor found the window seals were deformed, and said the bolts in the brackets that held the seals in place were "lock[ed] too tight" at the manufacturer, so he "had trouble getting the bolts out from the—whatever holds the seals in place, the . . . bracket." But he did so, and that repair corrected the leaking, which never occurred again.

In short, Mr. Naylor did not testify that the tight bolts holding the seals in place caused or could cause a defect in the one-touch mechanism. He was asked: "And if the seals are not put in properly, can that cause an obstruction for the windows to bounce back down?" He replied, "It [the repair order] doesn't say that the seals weren't put in properly. It says that the seals were

_____

limitation on the time in which a latent defect may surface and create liability, and after that period, the warrantor is no longer responsible. We deny the request. The document defendant cites is a letter from the staff of the bill's sponsor, responding to a letter from an attorney for a dealers' association. There is no indication the letter was communicated to the Legislature as a whole. For that reason, it does not constitute cognizable legislative history. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 30; see *id.* at p. 37 [authoring legislator's files and letters not communicated to the Legislature as a whole do not constitute legislative history].)

deformed and that the bolts that hold the bracket that hold the seal were locked tighted [*sic*]."

Plaintiffs nonetheless assert that Mr. Naylor testified the deformed seals and brackets locked too tight at manufacture "could cause the problem with the window." Mr. Naylor did not testify to that. Mr. Naylor was asked, "So once the new seals are put in and the windows are recalibrated, if they are not calibrated correctly, would that make the window bounce back down?" and he answered, "It's possible, yes." In other words, an incorrect recalibration during a repair could cause the problem—not deformed seals or their brackets.

In sum, the defect in the one-touch mechanism did not occur until two years after plaintiffs leased the car, and there is no evidence it was caused by some other defect present when the car was manufactured. The alternative JNOV ruling was correct.

## DISPOSITION

The judgment is affirmed. Defendant shall recover costs of appeal.


GRIMES, J.


WE CONCUR:


BIGELOW, P. J.


STRATTON, J.


21