Filed 3/14/22  Galletta v. FCA US LLC CA1/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

<table>
<tr><td>

GIANNA GALLETTA,

     Plaintiff and Appellant,

v.

FCA US LLC et al.,

     Defendants and Respondents.

</td><td>

A157293

(City & County of San Francisco Super. Ct. No. CGC-17-559203)

</td></tr>
</table>

Plaintiff Gianna Galletta appeals a judgment entered upon a jury verdict finding a vehicle manufactured by defendant FCA US LLC (FCA) and sold to her by defendant Putnam Chrysler Jeep Dodge (Putnam) to have been unmerchantable, but also finding she suffered no compensable damages.  She contends that the evidence compels a monetary award in her favor and that the trial court misinstructed the jury.  We shall affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Galletta bought a new 2014 Jeep Patriot vehicle from Putnam on June 24, 2013.  The vehicle was financed over 72 months, with total payments of $36,706.80.

On August 8, 2013, Galletta brought the vehicle to Putnam's service department, complaining the airbag light was on.  The light was not on at the time of service, but Putnam found a stored code (B1C12) that indicated a

circuit in the head restraint control system was low.  Putnam cleared the code and concluded that the system was operating as designed and no further repairs were required unless the condition became "active" again.

A few weeks later, on August 29, 2013, Galletta one more brought the vehicle to Putnam, reporting the airbag light was coming on and off randomly.  Putnam again pulled the "B1C12" code, found the driver's side headrest circuit—which is responsible for airbag deployment and seatbelt tension in the event of an impact—was low, performed diagnostic tests, and ordered a replacement part.

In late September 2013, Putnam's service department replaced the headrest and the wiring harness, and concluded the problem was resolved.  The service order and invoice reflected a $20 charge for gasoline, but the "comments" section stated, "gas voucher."  On September 28, while the vehicle was in the service center, Galletta contacted FCA and said that because "the airbags are not working and the service center has failed numerous times to diagnose/fix the problem, I do not feel safe driving that vehicle."  She said she had filed a complaint with the Better Business Bureau and contacted a Lemon Law lawyer.  Two days later, on September 30, Putnam told Galletta the vehicle was ready to be picked up.

On October 1, 2013, Galletta again brought the vehicle to Putnam's service center, reporting the same problem with the airbag light.  Putnam removed the driver's side seat and carpet and found a problem with the wiring near the seat.  Putnam repaired and rerouted the wires and taped them up.  The odometer showed a total mileage of 5,397.  The light did not come on after that point.

Aside from the ambiguous reference to $20 for gasoline in late September—which we will discuss later—the invoices show all these repairs were carried out at no cost to Galletta.

A couple of weeks later, Galletta looked under the seat and saw what appeared to her to be sloppy mechanical work, with one of the pieces not plugged in. She was uncertain whether the reason the airbag light was no longer coming on was that the problem had been fixed or that the airbag had been disconnected. She contacted Putnam, spoke with the manager, and tried to make another appointment, but she did not bring the vehicle to Putnam for this problem again because the dealership said it would not provide a rental vehicle. She called another dealership about the wires under the seat and was told she would have to return the vehicle to Putnam. She made no effort to address her concerns with the wires after that.

After October 2013, Galletta testified, she did not feel safe driving the vehicle. Nevertheless, she continued to do so for more than three and a half years before bringing this action, during which time the vehicle's mileage reached approximately 60,000 miles. In the intervening years, Galletta brought the vehicle to Putnam only one more time, on March 11, 2014. She asked to have the oil change light reset, and the tires were rotated. She did not make any complaints about the airbag system or loose wires.

Galletta was involved in two accidents after Putnam made the repairs, one in the fall of 2014 that she described as "very minor," and a "rear-end[er]" in January 2018 that resulted in a "minor injury" but no severe damage to her vehicle. On neither occasion did the airbags deploy.

Galletta's boyfriend contacted FCA on March 1, 2017 on her behalf and said the vehicle had had multiple problems, including airbag concerns, that the couple did not feel safe in the vehicle, and that Galletta wanted FCA to

3

buy it back. An FCA representative offered assistance with the repair process, and Galletta said she preferred to take the vehicle to another dealership closer to her home. An inspection carried out on defendants' behalf in August 2018 during the course of this litigation, when the vehicle's mileage was 96,211, showed no problems with the airbag system and the airbag wires under the driver's seat appropriately secured.

Galletta filed this action on May 26, 2017, alleging violations of the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790, et seq.; the Song-Beverly Act) and the Magnuson-Moss Warranty Act (15 U.S.C. 2301 et seq.). She sought reimbursement for the entire amount paid or payable for the vehicle and incidental and consequential damages.

The jury was asked to consider three claims. As to the first, violation of express warranty in violation of the Song-Beverly Act, the jury found Galletta bought a vehicle that was manufactured or distributed by FCA; that FCA provided a written warranty; and that the vehicle did *not* have a defect covered by the warranty that substantially impaired its use, value, or safety to a reasonable buyer in Galletta's situation. As to the second, failure to complete repairs within 30 days, the jury found the vehicle had defects that were covered by FCA's written warranty to Galletta, but that it, or its authorized repair facilities, did *not* fail to complete repairs within 30 days so as to conform to the warranties. Defendants thus prevailed on these causes of action.

It is the third claim the jury considered, for breach of the implied warranty of merchantability, that is directly at issue in this case. (Civ. Code, § 1791.1.) After finding Galletta bought a vehicle manufactured or distributed by FCA and sold by Putnam in the course of their business, the jury answered "Yes" to the question, "Was the vehicle not of the same quality

4

as those generally acceptable in the trade or was the vehicle not fit for the ordinary purposes for which the vehicles are used?" The jury was then asked to determine the amount of damages Galletta was entitled to receive as restitution for the vehicle, and it responded, "$0."

The trial court entered judgment in defendants' favor and awarded them their costs in an amount later determined to be $5,666.88.

Galletta moved for partial judgment notwithstanding the verdict (JNOV) on the ground she was entitled to damages for the amount of the vehicle and her incidental expenses of $20.00 once the jury found defendants breached the implied warranty of merchantability. The trial court denied the motion.

## DISCUSSION

### I. Denial of JNOV

Galletta contends the trial court erred in denying her motion for JNOV because the uncontroverted evidence showed she was entitled to damages for breach of the implied warranty of merchantability.

A trial court may grant a motion for JNOV "only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support." (*Sweatman v. Department of Veterans Affairs* (2001) 25 Cal.4th 62, 68.) In reviewing the denial of such a motion, we affirm if there is any substantial evidence, contradicted or uncontradicted, to support the verdict. (*Ibid.*) To the extent the issue presented on appeal raises purely legal issues, however, our review is de novo. (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1138.)

Under the Song-Beverly Act, " 'an implied warranty of merchantability guarantees that "consumer goods meet each of the following: [¶] (1) Pass

without objection in the trade under the contract description.  [¶] (2) Are fit for the ordinary purposes for which such goods are used.  [¶] (3) Are adequately contained, packaged, and labeled.  [¶] (4) Conform to the promises or affirmations of fact made on the container or label." ' (Civ. Code, § 1791.1, subd. (a).)"  (*Isip v. Mercedes-Benz USA, LLC* (2007) 155 Cal.App.4th 19, 26.)  This implied warranty " 'arises by operation of law' and ' "provides for a minimum level of quality." ' "  (*Ibid.*)  "The core test of merchantability is fitness for the ordinary purpose for which such goods are used.  ([Cal. U. Com. Code,] § 2314.)"  (*Atkinson v. Elk Corporation of Texas* (2006) 142 Cal.App.4th 212, 228.)  This test requires a vehicle not only to "provide[] transportation from point A to point B," but also encompasses it being " 'in safe condition and substantially free of defects.' "  (*Isip*, at p. 27.)

Where the implied warranty of merchantability has been breached, the Song-Beverly act authorizes the buyer to "bring an action for the recovery of damages and other legal and equitable relief."  (Civ. Code, § 1794, subd. (a).)  If the buyer rightfully rejects or justifiably revokes acceptance of the goods and exercises any right to cancel the sale, section 2711 of the Commercial Code applies.  (Civ. Code, § 1794, subd. (b).)  That provision, in turn, provides in part that, with respect to such rejected goods, the buyer who cancels may recover "so much of the price as has been paid" as well as other damages.  (Cal. U. Com. Code, § 2711, subd. (1).)  Thus, "in the event of a breach of the implied warranty of merchantability, the buyer is entitled to cancel the contract and recover any amounts paid toward the purchase of the goods."  (*Music Acceptance Corp. v. Lofing* (1995) 32 Cal.App.4th 610, 621.)

The measure of damages is different if the buyer accepts the goods rather than revoking acceptance.  In that case, the measure is "the difference at the time and place of acceptance between the value of the goods accepted

6

and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount" (Cal. U. Com. Code, § 2714, subd. (2)), as well as incidental and consequential damages (*Id.*, § 2715; Civ. Code, § 1794, subd. (b)(2); *Simgel Co., Inc. v. Jaguar Land Rover North America, LLC* (2020) 55 Cal.App.5th 305, 315–316). Damages properly include the cost of repairs necessary to make the goods conform. (Civ. Code, § 1794, subd. (b)(2).)

The buyer need not afford the manufacturer an opportunity to repair before rescinding the purchase contract. (*Mocek v. Alfa Leisure, Inc.* (2003) 114 Cal.App.4th 402, 406–408; *Mexia v. Rinker Boat Co., Inc.* (2009) 174 Cal.App.4th 1297, 1307 (*Mexia*).) As explained in *Brand v. Hyundai Motor America* (2014) 226 Cal.App.4th 1538, 1548, "for fundamental defects triggering the statutory implied warranty, the buyer is not required to await a seller's attempt to make repairs [citation], and this is particularly true where the seriousness of the defect reasonably undermines the buyer's confidence in the vehicle."

Under these authorities, Galletta argues, the jury's finding that defendants breached the implied warranty of merchantability leads necessarily to an award of damages in the form of (1) the $36,706.80 purchase price, which would have reimbursed her for the payments she had made and allowed her to pay off the car loan, and (2) $20 she assertedly paid for gas while the vehicle was being serviced. As a result, she contends, the trial court erred in denying her motion for JNOV or, in the alternative, the matter should be remanded for a new determination of her damages.

We are unpersuaded. The jury found not only that Galletta was not entitled to restitution for her vehicle due to breach of the implied warranty of merchantability, but also, in connection with the other causes of action, that

the vehicle did *not* have a defect that substantially impaired its use, value, or safety and that defendants did *not* fail to complete repairs within 30 days to conform with the applicable warranties. The most natural reading of these verdicts taken as a whole is that the jury concluded that for a brief period after Galletta bought the Jeep, the problem with the airbag light rendered it "not of the same quality as those generally acceptable in the trade" or "not fit for the ordinary purposes for which the vehicles are used," but that Putnam's repairs, carried out in a timely manner and at no cost to Galletta, resolved the problem and rendered the vehicle fit for use. The jury could thus reasonably conclude, as it evidently did, that Galletta did not suffer damages from the problem with the airbag light. (See *Gutierrez v. Carmax Auto Superstores California* (2018) 19 Cal.App.5th 1234, 1247 [plaintiff must show injury from breach of implied warranty of merchantability].)

There is ample evidence to support this view, evidence Galletta ignores in her brief. (See *Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 882 [appellant challenging sufficiency of evidence must set forth all material evidence on the point, not merely own evidence, or error is waived]; accord, *Estes v. Eaton Corp.* (2020) 51 Cal.App.5th 636, 650.) In particular, after October 2013, the airbag light never went on again, and an inspection before trial showed that the wiring was repaired appropriately and that the airbags were operable. Despite Galletta's testimony that she did not feel safe driving the Jeep after October 2013, she took it and used it after Putnam's repairs, she put more than 90,000 miles on it in the next five years, she did not report a problem with the airbags when she took the vehicle to Putnam in March 2014, and she did not seek to have anyone else address any issue with the airbags in the intervening years. And, although Galletta testified she paid $20 for gas so Putnam's employees could test-drive the vehicle, there was

8

evidence, which we will discuss further below, that Putnam covered this cost through a voucher. The jury could reasonably conclude that once Putnam carried out the October 2013 repairs, the problem with the airbag light was resolved, the vehicle was safe and fit for ordinary use, and Galletta did not incur any expenses. In this context, it is significant that the measure of damages under the Song-Beverly Act if the buyer accepts goods expressly includes "the cost of repairs necessary to make the goods conform." (Civ. Code, § 1794, subd. (b)(2).) Here, defendants, not Galletta, bore the cost of those repairs.

Galletta argues, however, that the evidence shows she revoked her acceptance of the vehicle and that she is therefore entitled to recover the purchase price as a matter of law. She relies upon the facts that (1) she told FCA in late September 2013 that she did not feel safe driving the Jeep because Putnam had failed to diagnose and correct the problem with the airbags and that she had contacted the Better Business Bureau and a Lemon Law lawyer, and (2) her boyfriend told FCA in March 2017 that he and Galletta did not feel safe driving the vehicle for multiple reasons, including airbag concerns. As a result, she contends, she is entitled as a matter of law to return of the purchase price.

This argument is unconvincing. The jury was not asked to decide whether Galletta justifiably revoked her acceptance, and Galletta did not argue that she did so. That may well be because of the dearth, amounting to an insubstantiality, of evidence that she revoked her acceptance while there was a problem with the airbag light. Galletta's complaints in late September 2013 were followed by Putnam carrying out further repairs and Galletta not only taking the vehicle back but also going back to Putnam for service a few months later without mentioning a problem with the airbag and continuing

9

to use it for several years more without expressing any concern about the airbags to those who serviced the vehicle.  As to Galletta's complaints and requests for a repurchase in 2017, they were made long after the airbag light problem was resolved.  (See Civ. Code, §§ 1791.1, subd. (c), 1794, subd. (b)(1); *Ramos v. Mercedes-Benz USA, LLC* (2020) 55 Cal.App.5th 220, 227 [revocation must be justifiable].)  While it has been held that the Song-Beverly Act does not contain a " 'reasonable time' requirement by which the consumer must invoke the [Song-Beverly] Act or lose rights granted by that statutory scheme" (*Mexia, supra,* 174 Cal.App.4th at p. 1307, quoting *Krotin v. Porsche Cars North America, Inc.* (1995) 38 Cal.App.4th 294, 301–302; but see *Gavaldon v. DaimlerChrysler Corp.* (2004) 32 Cal.4th 1246, 1264 [revocation of acceptance under Civ. Code, § 1794, subd. (b)(1) must take place within reasonable time after buyer discovers ground for it]; accord, *Ramos,* at p. 227, fn. 3), we see no application of that principle to allow a plaintiff to revoke acceptance of a vehicle years after it has been rendered fit for ordinary use.

Because we conclude substantial evidence supports the verdict, we reject Galletta's contention that she was entitled to JNOV.  For the same reason, we reject her related argument that she is entitled to reversal on the ground of insufficient evidence and to a remand for retrial on the issue of damages.

## II. Nominal Damages

Galletta contends she is entitled to nominal damages as a matter of law.  She points to Civil Code section 3360, which provides that "[w]hen a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."  (See *Elation Systems, Inc. v. Fenn Bridge LLC* (2021) 71 Cal.App.5th 958, 965 [plaintiff entitled to nominal

10

damages for breach of contract even without actual damages], citing *Sweet v. Johnson* (1959) 169 Cal.App.2d 630, 632.) Whatever the merits of this position in the abstract, Galletta forfeited it by failing to raise the issue in any manner in the trial court. (See *Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264–265 [defects apparent when verdict was read are forfeited by failure to object unless verdict is inconsistent]; *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1242 [same]; *In re Marriage of Hinman* (1997) 55 Cal.App.4th 988, 1001–1002 [failure to object to computation of award in trial court forfeited argument on appeal].) We will not consider it now.

## III. Instructions in Response to Jury Inquiries

Galletta asks us to reverse the judgment on the ground the trial court did not provide appropriate instructions about the measure of damages in response to the jury's inquiries.

As it deliberated, the jury asked the court for clarification on a number of points. Two of its inquires pertained to the question on the verdict form for breach of the implied warranty of merchantability that asked the jury how much Galletta was entitled to receive as restitution for her vehicle. In question 4, the jury asked, "Are we [allowed] to take time spent or emotional stress of [Galletta] into our valuation or just dollars spent?" During a discussion of this question, Galletta's counsel expressed concern that the jury was seeking clarification of what restitution meant for purposes of the implied warranty cause of action, but he did not propose any further instruction directed toward that cause of action. The court said it did not wish to interfere with the deliberative process, and gave the jury the answer, "You should not factor in emotional stress into your valuation."

The jury then asked, in question 5, "Restitution for her vehicle, is it just for her car or can it include losses such as her time spent dealing with the

11

issues[?]" The court replied, "Restitution does not include losses for her time spent dealing with the issues."

Galletta contends that these questions show the jury was confused about the measure of damages for breach of the implied warranty of merchantability and that the trial court erred in failing to provide complete instructions on this question. "While 'there ordinarily is no duty to instruct in the absence of a specific request by a party[,] the exception is a complete failure to instruct on material issues and controlling legal principles which may amount to reversible error.' " (*Alaniz v. Sun Pacific Shippers*, *L.P.* (2020) 48 Cal.App.5th 332, 339.) This duty may include the duty to instruct the jury correctly on the measure of damages. (See *Moore v. Preventive Medicine Medical Group*, *Inc.* (1986) 178 Cal.App.3d 728, 745.) And trial courts "are duty bound to give supplemental instructions if additional guidance is necessary to give the jury ' "a full and complete understanding of the law applicable to the facts." ' " (*Flores v. Liu* (2021) 60 Cal.App.5th 278, 289; see *Eng v. Brown* (2018) 21 Cal.App.5th 675, 706, fn. 9 ["a trial court's failure to provide legal instructions in response to a jury's question may be reversible error under certain circumstances"]; *Bartosh v. Banning* (1967) 251 Cal.App.2d 378, 387–388.) We reverse for failure to instruct the jury only if it is probable that the error prejudicially affected the verdict, viewing the evidence in the light most favorable to the losing party. (*Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 524–525.)

Galletta contends that the jury's questions showed it was confused about the correct measure of damages and that the trial court should have included in its answers information about what *was* properly included in restitution. We have reviewed the instructions the jury received before it began its deliberations, and they provide little guidance on how the jury

12

should calculate damages for purposes of the cause of action for breach of the implied warranty of merchantability, simply informing the jury that it could award "[a]ctual, incidental, and/or consequential damages" only once, although Galletta alleged multiple legal theories.

Nevertheless, we see no probability of prejudice. The jury's questions do not suggest it did not realize restitution could properly include the value of the vehicle. Question 4 asked whether the jury could award restitution for time or emotional stress "*or just dollars spent*." (Italics added.) The court told the jury not to take emotional stress into account. Question 5 asked whether "*[r]estitution for her vehicle*" was "*just for her car*" or could it include the time Galletta spent handling the problems. (Italics added.) These questions indicate the jury was aware that it could award damages for the money Galletta spent on her vehicle and that it wondered whether restitution *also* included other damages. Equally important, the jury's verdicts, read as a whole, show it concluded the Jeep had a problem that briefly impaired its quality but that defendants fixed the problem in a timely manner and at no cost to Galletta, after which it was fit for ordinary use. Galletta has not shown she was prejudiced by any deficiencies in the instructions on the measure of damages.

## IV. Stipulation Regarding Damages

Galletta also contends the trial court erred by failing to instruct the jury that the parties stipulated she paid $20 out-of-pocket for gasoline while her vehicle was being repaired.

Galletta testified at trial that when she took the vehicle to Putnam in September 2013, she was told there was not enough gas in it for a test drive and she had to pay $20 for gas. On cross-examination, defendants showed

13

she testified at her deposition that she did not remember paying for gas at any point.

As the court and the parties were discussing jury instructions before the close of evidence, the question of the $20 arose. The specific question was whether the jury should be instructed pursuant to CACI Nos. 3242 and 3243 on incidental and consequential damages. Relevant to this point, the verdict forms for the cause of action for breach of express warranty and failure to repair within 30 days—but not for breach of the implied warranty of merchantability—contained separate lines for the types of damages available, including incidental and consequential damages, and instructions on how to calculate Galletta's total damages. Galletta's counsel argued the $20 was recoverable as either incidental or consequential damages, and defendants' counsel took the position that the evidence showed Galletta did not pay the money, but suggested that the parties stipulate that $20 should be put in the lines for incidental and consequential damages (lines the jury would reach only if it found defendants had breached an express warranty or failed to complete timely repairs) because "I don't want the jury . . . coming up with some crazy number over $20." After further discussion, the court suggested they "simply just put 20 on the form, and then we eliminate both instructions." Defendants' counsel agreed to this arrangement, but Galletta's counsel suggested that instead the court itself should instruct the jury the parties had stipulated the incidental and consequential damages were $20. The court said, "What I will do is I will replace the instruction on incidental and consequential [damages] with a simple instruction, saying that the parties have stipulated that incidental and consequential damages are $20." Galletta's counsel thanked the court, and defendants' counsel made no comment.

14

Testimony continued, and defendants' expert witness testified that the repair order showed that Putnam paid for the $20 for gas with a gas voucher. The witness explained that meant the dealer sent a voucher to the gas station to allow it to buy gas, and dealers typically do not ask customers to pay for gas in those situations. Galletta's counsel did not cross-examine the expert witness on this point.

As the court and parties again discussed the instructions after the close of evidence, defendants' counsel asked the court not to use any stipulation to $20 in consequential damages because the expert witness had testified the gas voucher would not have been noted on the repair order if Putnam had not used it to pay for the gas and, as a result, Galletta had no incidental or consequential damages. Galletta's counsel protested that she had not questioned the witness about the $20 because she believed the parties had a stipulation. The court ruled that "[w]ithout a stipulation, I can't give the stipulation," but that Galletta could argue that consequential and incidental damages were $20.

In closing argument, Galletta's counsel told the jury, "even though Ms. Galletta paid $20 for that particular repair attempt, which was related to the gas in the car, which I'll leave it up to you to decide whether Ms. Galetta is entitled to that $20. I know Mr. Gozzi testified that maybe it was a voucher. Ms. Galletta testified that she wrote it down so she knows she paid for it. I will not stand here and argue that you need to award that. That is not why we are here." The jury did not award any restitution for breach of the implied warranty of merchantability, implicitly suggesting it concluded Galletta did not pay $20 for the gas.

Galletta now argues that defendants are bound by their agreement to stipulate to $20 in incidental and consequential damages and that the trial

15

court erred in not instructing the jury as the parties agreed. This may seem on its face to be much ado about nothing, but Galletta argues the small amount has larger consequences: because she did not obtain any relief in this action, defendants were the prevailing parties and she was ordered to pay their costs in the amount of $5,666.88. (Code Civ. Proc., § 1032, subds. (a)(4) & (b).)

Galletta relies on two principles for her argument. First, a stipulation "made in open court constitutes ' "not only an agreement between the parties but also between them and the court, which the latter is bound to enforce, not only for the benefit of those interested, but for the protection of its own honor and dignity." ' " (*In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 488, quoting *Webster v. Webster* (1932) 216 Cal. 485, 489.) Second, she argues defendants are judicially estopped from backing out of their agreement because they successfully encouraged the $20 figure in order to limit a possible award of incidental and consequential damages. (See *Law Offices of Ian Herzog v. Law Offices of Joseph M. Fredrics* (1998) 61 Cal.App.4th 672, 678–679.) And, Galletta contends, she relied to her detriment on the position defendants successfully took when she declined to cross-examine defendants' expert on the gas voucher. In turn, defendants contend there was no stipulation; rather, they argue, they initially agreed to use $20 as Galletta's total incidental and consequential damages *if* the jury found liability on the express warranty claims, based on Galletta's testimony, and the "understanding" was "tentative or conditional at best," since it was reached before testimony had concluded.

Although it is a close issue, we conclude reversal is not required on this basis. We recognize and are troubled by the fact that defendants promoted the plan, for their own protection, to limit incidental and consequential

16

damages to $20 and then declined to follow through with a stipulation. But in context, it is apparent that the focus of their proposal was on filling in a blank on the verdict forms for the causes of action for express warranty and failure to repair within 30 days. And each of these verdict forms included spaces for detailed calculations of damages: the jury was to (1) calculate and add together the purchase price of the vehicle, charges for transportation and other options, finance charges, taxes and fees, and incidental and consequential damages, to arrive at a "subtotal"; (2) calculate the value of the use of the vehicle by adding some of the previously calculated dollar amounts, multiplying that result by the number of miles the vehicle was driven, and dividing the resulting number by 120,000; and (3) subtracting the value of use from the subtotal, with the resulting amount the total damages. The jury was *not* asked to carry out this complex calculation for the only cause of action at issue in this appeal, breach of the implied warranty of merchantability, and defendants' discussion of how the verdict forms should be filled out was not directed to that cause of action. Moreover, although the trial court stated it intended to instruct the jury the parties stipulated to $20 in incidental and consequential damages, the trial court later concluded there was no such stipulation, and Galletta points to no words uttered by defendants or their counsel that cast doubt upon the trial court's conclusion. On these facts, the trial court did not commit reversible error in declining to instruct the jury that incidental and consequential damages were $20.

Because we find no ground to reverse the judgment, we reject Galletta's contention that the cost award must fall as well.

## DISPOSITION

The judgment is affirmed. Appellant is ordered to pay costs on appeal.

17

                                    TUCHER, P.J.

WE CONCUR:

FUJISAKI, J.
PETROU, J.

*Galletta v. FCA US LLC et al.* (A157293)